1  BROWN WHITE & OSBORN LLP
   KENNETH P. WHITE, SBN 173993
2  KARINEH DARBINIAN, SBN
   333 South Hope Street, 40th Floor
3  Los Angeles, CA 90071
   kwhite@brownwhitelaw.com
4  kdarbinian@brownwhitelaw.com
   Tel.: 213.613.0550
5  Fax: 213.613.0550

6  Attorneys for Defendants 1023 Monterey Investors LLC; 1035 Monterey Investors
   LLC; A.J. Spurs, INC., Buelton; Addie Street Land Group LP; Akro Real Estate
7  Partners LLC; Distinctive Resorts, Inc.; Cliffs Resort LLC; Fernwood Resort, LLC;
   Higuera Brew LLC; JGK Construction LLC; John G. King, Individually and as
8  Trustee of the JG King Living Trust, Dated February 25, 2021; Los Lobos
   Investments LLC; Mission Grove Associates; Montalban Street Group; Spanish
9  Vineyards LLC; Sycamore Mineral Springs LLC; The Seaventure Resort, LLC; The
   Vineyards At Spanish Springs, LLC

10

11                    **UNITED STATES DISTRICT COURT**

12          **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

13

14  CORONITAS HOLDINGS, LLC, a              CASE NO.  2:25-cv-11946-JFW-SK
    Wyoming limited liability company; and
15  WOLVERINE ENDEAVORS VIII, LLC,
    a California limited liability company,
16
                   Plaintiffs,              **NOTICE OF MOTION AND
17                                           MOTION TO DISMISS**
    vs.
18
    1023 MONTEREY INVESTORS LLC, a
19  California limited liability company;
    1035 MONTEREY INVESTORS LLC, a          *[Concurrently filed herewith: Request*
20  California limited liability company; A.J.  *For Judicial Notice In Support of Motion*
    SPURS, INC., BUELLTON, a California      *To Dismiss; Declaration of Kenneth P.*
21  corporation; ADDIE STREET LAND          *White]*
    GROUP LP, a California limited
22  partnership; AKRO REAL ESTATE
    PARTNERS LLC, a California limited       Date:   June 1, 2026
23  liability company; APPLE FARM           Time:   1:30 p.m.
    COLLECTIONS-SLO, INC., a California      Court:  Courtroom 7A
24  corporation; BLACK CHAPS LLC, a
    California limited liability company;
25  BOUTIQUE HOTEL COLLECTION,
    INC., a California corporation;
26  DISTINCTIVE RESORTS, INC., a
    California corporation; CLIFFS RESORT
27  LLC, a California limited liability
    company; FERNWOOD RESORT, LLC,
28  a California limited liability company;

BROWN WHITE & OSBORN
A T T O R N E Y S

HIGUERA BREW LLC, a California limited liability company; JGK CONSTRUCTION LLC, a California limited liability company; CAROLE D. KING, an individual; CAROLE D. KING, as Trustee of the JOHN AND CAROLE KING FAMILY TRUST, DATED APRIL 20, 2006; JOHN G. KING, an individual; JOHN G. KING, as Trustee of the JG KING LIVING TRUST, DATED FEBRUARY 25, 2021; JOHN E. KING, an individual; JOHN E. KING, as Trustee of the JOHN AND CAROLE KING FAMILY TRUST, DATED APRIL 20, 2006; LANA LUCAS, an individual; LOS LOBOS INVESTMENTS LLC, a California limited liability company; PAUL G. METCHIK, an individual; MISSION GROVE ASSOCIATES, a California general partnership; MONTALBAN STREET GROUP, a California general partnership; MICHAEL NELSON, an individual; ORKA REAL ESTATE PARTNERS LLC, a California limited liability company; ROBIN L. ROSSI, an individual; ROBIN L. ROSSI as Trustee of THE ROBIN L. ROSSI LIVING TRUST U/D/T OCTOBER 19, 1990 a/k/a ROBIN L. ROSSI LIVING TRUST; SPANISH VINEYARDS LLC, a California limited liability company; SYCAMORE MINERAL SPRINGS LLC, a California limited liability company; THE SEAVENTURE RESORT, LLC, a California limited liability company; THE VINEYARDS AT SPANISH SPRINGS, LLC, a California limited liability company; and DOES 1-100, inclusive,

Defendants.

PLEASE TAKE NOTICE that on June 1, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 7A of the above-entitled Court, located at, First Street Courthouse, 350 West 1st Street, Los Angeles, CA 90012, the Honorable John F. Walter presiding, Defendants 1023 Monterey Investors LLC; 1035 Monterey Investors LLC; A.J. Spurs, Inc., Buelton; Addie Street Land Group LP;

2

Akro Real Estate Partners LLC; Distinctive Resorts, Inc.; Cliffs Resort LLC; Fernwood Resort, LLC; Higuera Brew LLC; JGK Construction LLC; John G. King, Individually and as Trustee of the JG King Living Trust, Dated February 25, 2021; Los Lobos Investments LLC; Mission Grove Associates; Montalban Street Group; Spanish Vineyards LLC; Sycamore Mineral Springs LLC; The Seaventure Resort, LLC; The Vineyards At Spanish Springs, LLC ("Defendants"), will and hereby do move the Court pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) and (6) for an order dismissing Plaintiffs CORONITAS HOLDINGS, LLC, a Wyoming limited liability company; and WOLVERINE ENDEAVORS VIII, LLC's Complaint on the grounds that Plaintiff failed to state a claim upon which relief can be granted and that the Court lacks jurisdiction because Plaintiffs have not pleaded facts establishing standing.

This motion is based on this Notice, the Memorandum of Points and Authorities filed herewith, the records and pleadings on file herein, and on such other evidence as may be presented. This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on February 18, 2027, and is documented in the parties' Rule 7-3 Conference Joint Statement, Docket No. 58. This motion is noticed for June 1, 2026 based on the stipulation of the parties. Docket No. 63.

DATED: February 27, 2026          Respectfully submitted,

BROWN WHITE & OSBORN LLP


By   s/Kenneth P. White
     KENNETH P. WHITE
     KARINEH DARBINIAN
     Attorneys for Defendants
     1023 Monterey Investors LLC; 1035
     Monterey Investors LLC; A.J. Spurs, Inc.,
     Buelton; Addie Street Land Group LP; Akro
     Real Estate Partners LLC; Distinctive
     Resorts, Inc.; Cliffs Resort LLC; Fernwood

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Resort, LLC; Higuera Brew LLC; JGK
Construction LLC; John G. King,
Individually and as Trustee of the JG King
Living Trust, Dated February 25, 2021; Los
Lobos Investments LLC; Mission Grove
Associates; Montalban Street Group;
Spanish Vineyards LLC; Sycamore Mineral
Springs LLC; The Seaventure Resort, LLC;
The Vineyards At Spanish Springs, LLC

4

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS .................................................................................... 5

TABLE OF AUTHORITIES ............................................................................. 6

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 10

I.    INTRODUCTION ................................................................................. 10

II.   SUMMARY OF THE ALLEGATIONS IN THE COMPLAINT AND THE
      JUDICIALLY NAOTICEABLE FACTS ............................................. 11

      1.  Wolverine's Purchase of the EWB judgment for $1,000 .................... 11

      2.  Coronitas' Purchase of the ICW Judgment ......................................... 12

III.  LEGAL STANDARD ........................................................................... 13

IV.   ARGUMENT ......................................................................................... 14

      A. PLAINTIFFS LACK STANDING TO BRING THEIR RICO CLAIMS ... 14

         1.  Plaintiffs' Standing Fails Because RICO claims Are Not Assignable ... 15

         2.  Even if RICO Claims Are Assignable, Plaintiffs' Assignments Are
             Deficient .......................................................................................... 16

      B. THE *NOERR-PENNINGTON* DOCTRINE BARS PLAINITFFS'
         CLAIMS AGAINST DEFENDANTS ........................................................ 18

         1.  The *Noerr-Pennington* doctrine Immunizes Petitioning Activity ..... 18

         2.  Under the *Kearney* Test, Defendants' Petitioning Activity Is
             Immunized ....................................................................................... 19

         3.  Plaintiffs Have Not Pled Facts Sufficient to Invoke the Sham
             Exception to *Noerr-Pennington* ....................................................... 21

      C. PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO STATE A
         RICO CLAIM ............................................................................................ 23

         1.  Plaintiffs Fail to Allege a RICO Enterprise ...................................... 24

         2.  Plaintiffs Fail to State Facts Establishing Any Predicate
             Acts, Let Alone for Each Defendant .................................................. 25

      D. PLAINTIFFS' FAILURE TO PLEAD A SUBSTANTIVE RICO
         CLAIM PRECLUDES THEIR RICO CONSPIRACY CLAIM ................. 29

V.    CONCLUSION ...................................................................................... 29

# TABLE OF AUTHORITIES

<strong>Page(s)</strong>

**Cases**

*Abadi v. Crown Induss., LLC*,
  No. 18-3493, 2019 WL 3572874 (E.D. Pa. Aug. 5, 2019) ......................................16

*Ad Visor, Inc. v. Pacific Tel. and Tel. Co.*,
  640 F.2d 1107 (9th Cir. 1981) ...................................................................................17

*Alan Neuman Productions, Inc. v. Albright*,
  862 F.2d 1388 (9th Cir.1988) ..............................................................................22, 24

*Alix v. McKinsey & Co.*,
  739 F. Supp. 3d 172 (2024) .......................................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................13

*B&G Foods N. Am., Inc. v. Embry*,
  29 F.4th 527 (9th Cir. 2022) .......................................................................................20

*BE & K Constr. Co. v. NLRB*,
  536 U.S. 516 (2002) ....................................................................................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................13

*Boat People S.O.S., Inc. v. VOICE*,
  No. 8:24-CV-00135-DOC-DFMX, 2024 WL 3914508
  (C.D. Cal. July 31, 2024)............................................................................................23

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
  235 F. Supp. 3d 1132 (E.D. Cal. 2017)......................................................................25

*Downeys Hyundai, Inc. v. Amin*,
  No. 5:25-CV-00357-MRA-DTB, 2025 WL 3692156
  (C.D. Cal. Dec. 16, 2025).....................................................................................24, 26

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  No. C-09-0511 RMW, 2010 WL 384736 (N.D. Cal. Jan. 29, 2010).......................25

*Epstein v. Washington Energy Co.*,
  83 F.3d 1136 (9th Cir. 1996).......................................................................................13

NOTICE OF MOTION AND MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

1

<b><u>Page(s)</u></b>

2

3    *Franchise Realty Interstate Corp. v. S.F. Local Joint Exec. Bd.*,
        542 F.2d 1076 (9th Cir. 1976), cert. denied, 430 U.S. 940, (1977) ..........................21

4

5    *Freeman v. Lasky, Haas & Cohler*,
        410 F.3d 1180 (9th Cir. 2005).......................................................................18, 19

6
    *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
7        362 F.3d 1367 (Fed. Cir. 2004) ...........................................................................18

8    *Howard v. Am. Online Inc.*,
        208 F.3d 741 (9th Cir. 2000) ...............................................................................28

9

10   *In re Gilead Scis. Sec. Litig.*,
        536 F.3d 1049 (9th Cir. 2008) .............................................................................13

11

12   *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs.,*
        *& Prods. Liab. Litig.*, 826 F. Supp. 2d 1180 (C.D. Cal. 2011) ................................24

13

14   *In re WellPoint, Inc. Out-Of-Network "UCR" Rates Litig.*,
        903 F. Supp. 2d 880 (C.D. Cal. 2012)..................................................15, 16, 25

15

16   *Keel v. Schwarzenegger*,
        No. CV0807591RMTVBK, 2009 WL 1444644

17       (C.D. Cal. May 19, 2009) .....................................................................................25

18   *Knappenberger v. City of Phoenix*,
        566 F.3d 936 (9th Cir. 2009) ...............................................................................13

19

20   *Lancaster Community Hospital v. Antelope Valley Hospital Dist.*,
        940 F.2d 397 (9th Cir. 1991).................................................................................24

21

22   *Lee v. Gates*,
        No. CV0103085DTCTX, 2001 WL 1098070

23       (C.D. Cal. Sept. 10, 2001) ........................................................................17, 25, 26

24   *Lerman v. Joyce Intern., Inc.*,
        10 F.3d 106 (3d Cir. 1993) ...................................................................................15

25

26   *Liam Meyer Irrevocable Tr. v. Chan*,
        No. 2:23-CV-1472 KJM DB PS, 2024 WL 557765

27       (E.D. Cal. Feb. 12, 2024) .....................................................................................23

28

7

# TABLE OF AUTHORITIES

**Page(s)**

*Living Designs, Inc. v. Dupont de Nermours and Co.*,
   431 F.3d 353 (9th Cir. 2005) .................................................................................22

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ...............................................................................13

*Metaxas v. Lee*,
   503 F. Supp. 3d 923 (N.D. Cal. 2020) ...................................................................26

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) ...................................................................22, 24, 26

*MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*,
   No. 22-cv-07604-JSC, 2023 U.S. Dist. LEXIS 156630
   (N.D. Cal. Sep. 5, 2023) .........................................................................................14

*MSP Recovery Claims, Series LLC v. Amgen Inc.*,
   No. 2:23-cv-03130-MEMF-PD, 2024 WL 3464410
   (C.D. Cal. July 15, 2024).................................................................................14, 16

*MSP Recovery Claims, Series LLC v. Jazz Pharms., PLC*,
   No. 5:23-cv-01591-EJD, 2024 WL 3511635 (N.D. Cal. July 22, 2024) ...........14, 15

*Nelson v. Nelson*,
   No. 2:17-CV-1333-EFB, 2018 WL 1392885 (E.D. Cal. Mar. 20, 2018) ...............23

*Nunag-Tanedo v. East Baton Rouge Parish School Bd.*,
   711 F.3d 1136 (9th Cir. 2013).................................................................................17

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007)...................................................................................23

*Omni Res. Dev. Corp. v. Conoco, Inc.*,
   739 F.2d 1412 (9th Cir. 1984)...........................................................................21, 22

*Or. Natural Res. Council v. Mohla*,
   944 F.2d 531 (9th Cir. 1991)..............................................................................21, 22

*Paulsen v. CNF Inc.*,
   559 F.3d 1061 (9th Cir. 2009)..................................................................................13

NOTICE OF MOTION AND MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page(s)

*Pineda v. Saxon Mortgage Services,*
  No. SacV 08-1187 JVS, 2008 WL 5187813 (C.D. Cal. Dec. 10, 2008)...................26

*Reves v. Ernst & Young,*
  507 U.S. 170 (1993) ............................................................................25

*RJ v. Cigna Health & Life Ins. Co.,*
  625 F. Supp. 3d 951 (N.D. Cal. 2022) ...............................................25

*Sanford v. MemberWorks, Inc.,*
  625 F.3d 550 (9th Cir. 2010) ............................................................28

*Shaw v. Nissan N. Am., Inc.,*
  220 F. Supp. 3d 1046 (C.D. Cal. 2016)..............................................24

*Shroyer v. New Cingular Wireless Servs., Inc.,*
  622 F.3d 1035 (9th Cir. 2010)...........................................................13

*Silvers v. Sony Pictures Entertainment, Inc.,*
  402 F.3d 881 (9th Cir. 2005)........................................................14, 15

*Sosa v. DIRECTV, Inc.,*
  437 F.3d 923 (9th Cir.2006).......................................................*passim*

*United States v. Turkette,*
  452 U.S. 576 (1981) ............................................................................23

*Vaughan v. Wardhaugh,*
  No. 23-CV-02879-RFL, 2024 WL 2853972 (N.D. Cal. May 10, 2024) .................25

*Villarroel v. Recology Inc.,*
  775 F. Supp. 3d 1050 (N.D. Cal. 2025) ..............................................25

*Zap Cellular, Inc. v. Kurland,*
  2015 WL 8207315 (E.D.N.Y. Dec. 6, 2015) .........................................15

**Statutes**

18 U.S.C. § 1962(c) .......................................................................10, 20, 23

18 U.S.C. § 1962(d) .............................................................................10, 26

9

1

2

## MEMORANDUM OR POINTS AND AUTHORITIES

## I.    INTRODUCTION

3

Plaintiffs are predatory debt collection speculators.  They bought several

4

judgments for a pittance, attempted to collect on them through litigation, and now bring

5

this RICO Complaint because they are dissatisfied with their return on investment.  The

6

Complaint asserts that Defendants engaged in a broad conspiracy for some closely held

7

entities and individuals to hold the debt of others, but doesn't establish how that is

8

wrong or fraudulent. The Complaint is sprawling and extravagant in its invective, but

9

extremely conclusory and vague, failing to specify in particular predicate acts the

10

Defendants allegedly engaged.  Their apparent definition of racketeering is both

11

overbroad and self-serving, and encompasses defending against their debt collection

12

efforts by litigation conduct like filing motions to quash, appealing discovery orders,

13

and ***successfully*** moving to dismiss improper involuntary bankruptcies.

14

The Complaint suffers from a diverse array of fatal defects, and Defendants[1] ask

15

the Court to dismiss it.

16

First, Plaintiffs lack standing to sue based on the judgments they bought.  Under

17

the better and more persuasive cases addressing the subject, RICO claims are not

18

assignable.  Even if they were, Plaintiffs' assignments fail because they don't include

19

the language necessary to make such an assignment.  The Court should dismiss the

20

Complaint for lack of standing.

21

Second, the *Noerr-Pennington* Doctrine dooms Plaintiffs' Complaint.  A

22

substantial part of Plaintiffs' Complaint explicitly focuses on Defendants' petitioning

23

---

24

[1] This motion is brought by Defendants 1023 Monterey Investors LLC; 1035 Monterey Investors LLC; A.J. Spurs, INC., Buelton; Addie Street Land Group LP; Akro Real Estate Partners LLC; Distinctive Resorts, Inc.; Cliffs Resort LLC; Fernwood Resort, LLC; Higuera Brew LLC; JGK Construction LLC; John G. King, Individually and as Trustee of the JG King Living Trust, Dated February 25, 2021; Los Lobos Investments LLC; Mission Grove Associates; Montalban Street Group; Spanish Vineyards LLC; Sycamore Mineral Springs LLC; The Seaventure Resort, LLC; The Vineyards At Spanish Springs, LLC.

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS

1    activity – things like filing motions and collection actions, appealing orders, and

2    discussing litigation strategy.  The *Noerr-Pennington* Doctrine immunizes those things

3    from suit.  Plaintiffs' impossibly vague and conclusory allegations of fraud are

4    insufficient to invoke the sham exception.

5          Third, Plaintiffs fail to plead facts sufficient to state a RICO claim.  Rather than

6    state facts sufficient to identify an enterprise that is distinct from the predicate acts

7    Plaintiffs claim, the Complaint treats the acts and the enterprise as one and the same.

8    Moreover, the Complaint utterly fails to plead RICO – and especially the predicate acts

9    – with particularity. An unbroken wall of precedent requires Plaintiffs to allege the who,

10   when, and what of each alleged predicate and to associate each Defendant with at least

11   two such acts.  Plaintiffs don't – they rely on their broad, vague, conclusory narrative.

12         Fourth, and finally, Plaintiffs' RICO conspiracy claim must fall with the

13   substantive claim.

14         Therefore, the Court should dismiss the Complaint.  Because Plaintiffs lack

15   standing, and because *Noerr-Pennington* immunizes the conduct Plaintiffs complain of,

16   the Court should dismiss with prejudice.

17      **II.    SUMMARY OF THE ALLEGATIONS IN THE COMPLAINT**

18              **AND THE JUDICIALLY NOTICEABLE FACTS**

19         The Complaint is voluminous but for purposes of this Motion it's only necessary

20   to review a few facts alleged therein.[2]

21         ***The Assignments***

22         **1.     Wolverine's Purchase of the EWB Judgment for $1,000**

23         On September 14, 2011, third-party East West Bank ("EWB") obtained a

24   judgment against Defendants John E. King and Carole D. King (the "Debtors") in the

25   principal amount of $5,434,547.68, plus interest, attorneys' fees and costs ("EWB

26   _____

27   [2] This Motion treats the facts alleged in the Complaint as true only because of the
     procedural posture of the case.  Defendants do not concede the actual truth of any
28   allegations.

Judgment"). Complaint ¶ 20, Ex. 5, pp. 120-128. Plaintiffs allege the EWB Judgment now exceeds $10 million. *Id.* ¶ 20, 87.

Plaintiff Wolverine Endeavors VIII, LLC ("Wolverine") purchased the EWB Judgment from EWB on or about May 17, 2021, for a mere $1,000. Id. ¶ 87, Ex. 5, pp. 122-124; Request for Judicial Notice ("RJN") ¶ 1, Ex. A (Involuntary Bankruptcy Petition, Ex. 2: Agreement for Sale and Purchase of Judgment, p. 4, Section D(2)). The Acknowledgement of Assignment of the EWB Judgment reflects an assignment from EWB of only the 'rights, title and interest' in the judgment to Wolverine. Complaint ¶ 20, Ex. 5 (Acknowledgment of Assignment of Judgment Entered September 13, 2011 ("EWB Assignment")) ¶ 5.

### 2. Coronitas' Purchase of the ICW Judgment

On September 14, 2017, Insurance Company of the West ("ICW") obtained a judgment against Spanish Springs, LLC and Debtors individually, in the principal amount of $5,434,547, plus interest, attorneys' fees and costs ("ICW Judgment"). Complaint, ¶ 19, Ex. 4. The ICW Judgment allegedly exceeds $11 million. *Id.* ¶ 97. On July 22, 2025, Plaintiff Coronitas Holdings, LLC ("Coronitas") purchased the ICW Judgment. Complaint ¶ 19, Ex. 4. The Acknowledgement of Assignment of the ICW Judgment reflects an assignment from ICW of only the 'rights, title and interest' in the judgment to Coronitas. *Id.* ¶ 19, Ex. 4 (Acknowledgment of Assignment of Judgment and Judgment Liens ("ICW Assignment")) ¶ 7.

### *Allegations Against the Present Defendants*

The Defendants bringing this motion are JG King, son of codefendants John and Carole King; JGK Construction, his construction company; and entities 1023 Monterey Investors LLC, 1035 Monterey Investors LLC, A.J. Spurs, Inc. Buellton, Addie Street Land Group LP, Akro Real Estate Partners LLC, Distinctive Resorts, Inc., Cliffs Resort LLC, Fernwood Resort, LLC, Higuera Brew LLC, Los Lobos Investments LLC, Mission Grove Associates, Montalban Street Group, Spanish Vineyards LLC, Sycamore Mineral Springs LLC, The Seaventure Resort LLC, and the Vineyards at

Spanish Springs, LLC.  Complaint at ¶¶ 21-51.  Plaintiffs assert that all of these entities had a role in paying money to codefendant John King.  Complaint at ¶ 52.

The Complaint broadly alleges that Defendants participated in a conspiracy to prevent collection of the judgments against codefendants John and Carole King that Plaintiffs purchased for pennies on the dollar.  Plaintiffs claim that Defendants acquired and held senior debt and liens on Debtor's properties in a way that made it difficult or unprofitable for them to enforce the judgments, which were junior debt.  A substantial portion of the Complaint specifically cites as wrongdoing things Defendants filed in courts:  Complaint at ¶ 4 ("manipulating courts"), ¶ 11 (seeking writs of execution from courts), ¶ 12 (renewing judgments with court), ¶ 13 (filing assignments and acknowledgements of assignment in court), ¶ 14 (filing motions for enforcement of judgments), ¶ 52 ("directing fraudulent court filings"), ¶ 107 (filing assignments of judgments), ¶ 136 (filing requests for writs of execution), ¶ 137 (seeking a levy by U.S. Marshals), ¶ 138 (filing actions to enforce judgments), ¶ 139 (filing applications for order of appearance and examination), ¶ 140 (filing motions for charging orders), ¶ 152 (filing a motion for leave to intervene), ¶ 153 (appealing post-judgment orders and orders to disclose tax returns and filing a petition for writ of mandate), ¶ 154 (filing motions to quash), ¶ 172 (filing motions to dismiss involuntary bankruptcy petitions) , ¶ 182 (filing motions for damages against Plaintiffs for filing the dismissed bankruptcy petitions), ¶ 190 (having discussions to coordinate litigation strategy), ¶ 217 (filing ex parte applications to extend liens), and ¶ 221g (seeking to intervene in enforcement actions).

Defendants have offered two claims for relief in their Complaint:  civil RICO under 18 U.S.C. § 1962(c) and civil RICO conspiracy under 18 U.S.C. § 1962(d).  Both are meritless.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), The Court must dismiss a complaint when it fails to present a cognizable legal theory or fails to allege sufficient

facts to support such a theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). To survive a motion to dismiss, a complaint must contain factual matter which, if accepted as true, is enough to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating a complaint, the Court accepts only *well-pleaded factual allegations* as true. The Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009) Rather, "[conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996), Moreover, the Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

Lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), and lack of Article III standing requires dismissal for lack of jurisdiction under Rule 12(b)(1). *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011)

The Court may dismiss a claim without leave to amend when the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## IV.    <u>ARGUMENT</u>

## A.    **PLAINTIFFS LACK STANDING TO BRING THEIR RICO CLAIMS**

Plaintiffs' Complaint fails first because they lack standing to bring it.

Plaintiffs' RICO claim is premised on their difficulty collecting on judgments they purchased. Plaintiffs assert standing to bring their RICO claims based on the

assignments of the EWB and ICW Judgments, both of which only convey the "rights, title, and interest" in the respective assignments to Plaintiffs.  Complaint ¶¶ 19, 20, 87, 97, Exs. 4-5; RJN, ¶ 1, Ex. A.  However, even if RICO claims can be assigned – and the better authority says they cannot be – neither the EWB or ICW Assignments nor the Agreement for Sale and Purchase of the EWB Judgment includes terms sufficient to do so.  Indeed, federal courts that have permitted the assignment of RICO claims agree uniformly that such an assignment can only be accomplished through express language either conveying "all" of the assignors claims and demands, or specifically conveying the right to any RICO claim.  Mere assignment of "rights, title, and interest" are not enough.

### 1.    Plaintiffs' Standing Fails Because RICO Claims Are Not Assignable

The Ninth Circuit has not definitively ruled on the assignability of RICO claims, and district courts within the Ninth Circuit remain divided on the issue.  A recent district court decision analyzing the split found RICO claims to be unassignable, reasoning that RICO's private right of action is a statutory creation limited only to those *directly* injured in their business or property.  *MSP Recovery Claims, Series LLC v. Jazz Pharms., PLC*, No. 5:23-cv-01591-EJD, 2024 WL 3511635, at *16-7 (N.D. Cal. July 22, 2024) (citing cases and disagreeing with *MSP Recovery Claims, Series LLC v. Amgen Inc.*, No. 2:23-cv-03130-MEMF-PD, 2024 WL 3464410, *23 (C.D. Cal. July 15, 2024); see also, *MSP Recovery Claims, Series LLC v. Actelion Pharms*. US, Inc., No. 22-cv-07604-JSC, 2023 U.S. Dist. LEXIS 156630, at *14 (N.D. Cal. Sep. 5, 2023).

The Ninth Circuit has held that "Congress' explicit listing of who may sue [] should be understood as *an exclusion of others* from suing."  *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 883 (9th Cir. 2005) (emphasis in original).  Applying this rationale, the *Jazz Pharms* court held that "RICO clearly defines those who may initiate an action as [a]ny person injured in his business or property by reason of a violation of RICO. Thus, [assignees] who were not injured in their business or property

by a RICO violation, cannot initiate an action under RICO." *Jazz Pharms*., *PLC*, 2024
WL 3511635, at *17 (citing *Silvers*, 402 F.3d at 883).

The same rationale applies here.  RICO's statutory language and the Ninth
Circuit's analysis in *Silvers* logically require a finding that, similar to the Copyright
Act, the RICO statute allows only those directly injured in business or property to sue
under RICO.  In other words, the Court should follow *Jazz Pharms* and find that a
RICO claim is not assignable, and Plaintiffs do not have standing under the assignment
to bring a RICO claim.

**2.    Even if RICO Claims Are Assignable, Plaintiffs' Assignments Are
Deficient**

Even if the Court rules that RICO claims are assignable, the assignments at issue
here are deficient because they do not expressly assign *any* claims to Plaintiffs, let alone
make any specific reference to assignment of ICW or EWB's potential RICO claims.
Federal courts that have found RICO claims to be assignable agree that such an
assignment can be accomplished ***only through an express agreement***. See *Lerman v.
Joyce Intern., Inc.*, 10 F.3d 106, 112 (3d Cir. 1993).

An "express" assignment requires specific language that either explicitly
references the RICO claim or broadly and unambiguously assigns all causes of action in
a manner that would encompass the RICO claim.  For example, language assigning "all
causes of action,… claims and demands of whatsoever nature" has been held sufficient
to meet the express assignment requirement because it is unambiguous and all-
inclusive. *Lerman,* 10 F.3d at 112-13; *Zap Cellular, Inc. v. Kurland*, 2015 WL
8207315, at *6 (E.D.N.Y. Dec. 6, 2015).

Conversely, "those that merely assign the 'rights, title and interest' in the subject
of the agreement have been held deficient."  *See In re WellPoint, Inc. Out-Of-Network
"UCR" Rates Litig.*, 903 F. Supp. 2d 880, 897-98 (C.D. Cal. 2012) (citing *Lerman*,
supra, at 10 F.3d at 112) (dismissing complaint because plaintiff failed to allege that
they obtained "express" assignments to pursue antitrust and RICO claims on behalf of

16

their patients, and thus lacked standing to assert these claims via assignment).  General assignments that merely transfer "rights, title, and interest" are insufficient to assign RICO claims because they lack the specificity required to demonstrate an intent to transfer legal claims.  *Lerman*, 10 F.3d at 112; *Abadi v. Crown Induss., LLC*, No. 18-3493, 2019 WL 3572874, at *5 (E.D. Pa. Aug. 5, 2019); *Alix v. McKinsey & Co.*, 739 F. Supp. 3d 172 (2024) ("whether the Assignment included the RICO claims that [plaintiff] brings here turns on whether it made 'specific reference' to those claims or made 'an unambiguous assignment of causes of action in a manner that would clearly encompass' them").

Here, the assignment under which Coronitas claims standing reflects the assignment by ICW of "all of ICW's right, title, and interest, in and to the Judgment…" Complaint, Ex. 4, ICW Assignment ¶ 7.  Likewise, the assignment under which Wolverine claims standing reflects the assignment "of East West Banks' right, title and interest, in the Judgment" to Wolverine.  *Id.*, Ex. 5, EWB Assignment ¶ 5.  These assignments are therefore deficient and do not confer standing upon Plaintiffs to bring their RICO claim.

The rationale for this heightened requirement is rooted in concerns about potential split recoveries and duplicative liability, which could arise if assignments were not explicit.  *In re WellPoint, Inc*, 903 F. Supp. 2d at 897.  Courts also acknowledge concerns about potential commoditization of RICO claims if they were freely assignable to unrelated third parties. *MSP Recovery Claims, Series LLC v. Amgen Inc.*, supra, 2024 WL 3464410 at *23 (highlighting the need for a relationship between the assignee and the underlying transaction.)  That concern is vindicated by this case, in which predatory and speculative debt collectors have bought judgments for a tiny fraction of their face value and weaponized them in a bogus RICO claim.

Therefore, because Plaintiffs do not have standing to bring their RICO claim, the Complaint must be dismissed in its entirety, with prejudice.

NOTICE OF MOTION AND MOTION TO DISMISS

**B.      THE *NOERR-PENNINGTON* DOCTRINE BARS PLAINTIFFS' CLAIMS AGAINST DEFENDANTS**

Plaintiffs' Complaint first fails because it is premised on protected petitioning activity immunized by the *Noerr-Pennington* Doctrine.

**1.      The *Noerr-Pennington* Doctrine Immunizes Petitioning Activity**

The *Noerr-Pennington* Doctrine protects the First Amendment right to petition the government for redress of grievances. *Nunag-Tanedo v. East Baton Rouge Parish School Bd.*, 711 F.3d 1136, 1138–39 (9th Cir. 2013). Under the Doctrine, those who petition the government are "generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir.2006). The right to petition extends to "all departments of the government" and includes petitioning both state and federal courts through litigation. *Id.* at 929-30; *Kearney v. Foley & Lardner, LLP* 590 F.3d 638, 644 (9th Cir. 2009). The Doctrine "ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000). In short, the Doctrine protects the right to file lawsuits.

Though the *Noerr-Pennington* doctrine originally arose in the antitrust context, the Supreme Court has since applied it "with full force in other statutory contexts." *Sosa*, 437 F.3d at 930; *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (holding that, because it "is based on and implements the First Amendment right to petition," the Noerr–Pennington doctrine "applies equally in all contexts"). Specifically, the doctrine applies to RICO suits attacking petitioning activity. *Sosa*, 437 F.3d at 932 (affirming dismissal of RICO claim based on Noerr-Pennington immunity). It applies to all kinds of petitioning activity, including petitioning related to debt and collections. *Ad Visor, Inc. v. Pacific Tel. and Tel. Co.,* 640 F.2d 1107, 1110 (9th Cir. 1981) ("In sum, Berry's state court collection suits are fully protected under its First Amendment right "to petition the government (the judiciary) for redress of private grievances . . . .").

*Noerr-Pennington* protection extends to communications with courts such as "[a} complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something . . ." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005).   Moreover, the *Noerr-Pennington* Doctrine protects not just the actual petitioning activity, but investigation and preparation to petition a court.  "[I]n the litigation context, not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected by the Noerr–Pennington doctrine." *Sosa*, 437 F.3d at 934 (emphasis added & citations omitted). The Doctrine immunizes "litigation-related activities preliminary to the formal filing of the litigation," *Id*. at 937, and "communications between private parties," "so long as they are sufficiently related to petitioning activity," *Id.* at 935.  *See Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1376 (Fed. Cir. 2004) ("[O]ur sister circuits, almost without exception, have applied the Noerr protections to pre-litigation communications.").

## 2.    Under the *Kearney* Test, Defendants' Petitioning Activity Is Immunized

In deciding whether the Doctrine immunizes a defendant from claims in a particular lawsuit, this Circuit applies a three-part test:  "(1) identify whether the lawsuit imposes a burden on petitioning rights, (2) decide whether the alleged activities constitute protected petitioning activity, and (3) analyze whether the statutes at issue may be construed to preclude that burden on the protected petitioning activity." *Keraney*, 590 F.3d at 644, citing *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 530-33, 535-37 (2002).  Those elements, applied here, show that the Doctrine immunizes Defendants from the Complaint.

First, the Complaint expressly burdens petitioning rights.  Plaintiffs' Complaint is premised repeatedly and explicitly on the petitioning activity of Defendants and their co-defendants.  The Complaint accuses both Defendants and their codefendants of

19

RICO predicate acts based on a wide variety of petitioning activity:  Complaint at ¶ 4 ("manipulating courts"), ¶ 11 (seeking writs of execution from courts), ¶ 12 (renewing judgments with court), ¶ 13 (filing assignments and acknowledgements of assignment in court), ¶ 14 (filing motions for enforcement of judgments), ¶ 52 ("directing fraudulent court filings"), ¶ 107 (filing assignments of judgments), ¶ 136 (filing requests for writs of execution), ¶ 137 (seeking a levy by U.S. Marshals), ¶ 138 (filing actions to enforce judgments), ¶ 139 (filing applications for order of appearance and examination), ¶ 140 (filing motions for charging orders), ¶ 152 (filing a motion for leave to intervene), ¶ 153 (appealing post-judgment orders and orders to disclose tax returns and filing a petition for writ of mandate), ¶ 154 (filing motions to quash), ¶ 172 (filing motions to dismiss involuntary bankruptcy petitions)[3], ¶ 182 (filing motions for damages against Plaintiffs for filing the dismissed bankruptcy petitions), ¶ 190 (having discussions to coordinate litigation strategy), ¶ 217 (filing ex parte applications to extend liens), and ¶ 221g (seeking to intervene in enforcement actions).  It doesn't matter whether Plaintiff has styled those petitioning activities as wrongful – the question is whether the Complaint burdens them.  *Kearney*, 590 F.3d at 645 ("the question at this stage is not whether the conduct at issue is fraudulent and abusive, but instead whether the success of Kearney's lawsuit would constitute a burden on petitioning rights").

Second, those activities are all protected petitioning conduct.  *Noerr-Pennington* covers all of the filings with and petitions to courts, including notices, motions, applications, actions, and appeals.  *Freeman*, 410 F.3d at 1184.  It also covers the "communications between private parties" about litigation strategy because they are "sufficiently related to petitioning activity." *Sosa,* 437 F.3d at 935.  Once again, the fact

---

[3] Plaintiffs treat filing motions to dismiss bankruptcy petitions as a predicate act for RICO even though they admit the court granted the motions and even though one of those dismissals was upheld on appeal.  Complaint at ¶¶ 181, 185.  Even *successfully* opposing Plaintiffs in a way endorsed by a court is apparently a RICO.

NOTICE OF MOTION AND MOTION TO DISMISS

that Plaintiffs characterize Defendants' petitions as fraudulent is not dispositive.  *See Kearney*, 590 F.3d at 646 (rejecting argument that "misconduct" could not be incidental to lawsuit and thus protected by the doctrine).

Third, under the last prong of the *Kearney* test, the Court must determine whether the RICO statute may be construed to avoid burdening petitioning conduct and thus avoid the constitutional issue.  "Thus, we ask at step three whether the statute . . . . can be construed to avoid burdening Defendants' Petition Clause rights."  *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 539-40 (9th Cir. 2022).  That part is simple.  The Ninth Circuit has already found that courts need not interpret RICO to allow lawsuits over petitioning activity that doesn't fall into *Noerr-Pennington*'s sham exception.  *Sosa*, 437 F.3d at 942.  As is set forth below, this case doesn't fall into that exception.

Therefore, because the Complaint is explicitly premised on protected petitioning activity immune from suit, the Court should dismiss it without leave to amend.

### 3.    Plaintiffs Have Not Pled Facts Sufficient to Invoke the Sham Exception to *Noerr-Pennington*

Defendants anticipate that Plaintiffs will argue that the "sham litigation" exception to *Noerr-Pennington* applies here.  But Plaintiffs have not alleged sufficient facts to trigger that exception.

This Circuit has identified "three circumstances in which the sham litigation exception might apply: first, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful, second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose, and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy."  *Sosa,* 437 F.3d at 938 (citation modified).

However, a plaintiff may not invoke these exceptions in conclusory form. "[I]n order to state a claim for relief ... a complaint must include allegations of the specific activities" the defendant engaged in that deprive the defendant's conduct of Noerr-Pennington protection. *Franchise Realty Interstate Corp. v. S.F. Local Joint Exec. Bd*., 542 F.2d 1076, 1082 (9th Cir. 1976), cert. denied, 430 U.S. 940, (1977). That means that the Court must apply a "heightened pleading standard" to allegations seeking to invoke the fraud exception to *Noerr-Pennington.*

*Or. Natural Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991). "Conclusory allegations are not sufficient to strip a defendant's activities of Noerr-Pennington protection." *Id.* Nor can the plaintiff "simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party." *Id.* "[N]othing more is alleged than the use of false affidavits in the state suit. That, however, is a charge that can easily be leveled, and it is thus insufficient by itself to overcome Noerr-Pennington immunity." *Omni Res. Dev. Corp. v. Conoco, Inc.,* 739 F.2d 1412, 1414 (9th Cir. 1984).

Here, Plaintiffs have offered only conclusory allegations, not specific facts sufficient to meet a heightened pleading standard, to satisfy any theory of the sham exception to *Noerr-Pennington*. They do not offer any facts sufficient to show that any particular filing was "objectively baseless." *Sosa*, 437 F.3d at 938. They don't offer facts supporting a "series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose." *Id.*

Finally, though they frequently assert that Defendants defrauded or misled courts, they offer no specifics, let alone sufficient specifics to show that the alleged fraud "deprive[d] the litigation of its legitimacy." *Id.* Instead, as is discussed more fully below, Plaintiffs rely on general, conclusory allegations that the documents filed in court were false or fraudulent. They don't identify any specific false statements in specific filings or explain how they are false and material. They assert at length that Defendants' petitioning activity was fraudulent because Defendants didn't disclose to

1    the various courts the relationships between the debtors and creditors involved, but they

2    don't point to any legal requirement for that disclosure:  they simply *ipse dixit* assert it

3    was required.  They don't, for instance, identify any question in any form or filing that

4    Defendants answered falsely, or point to any disclosure requirement under any law or

5    rule.  They claim that filings were "in violation of the California Enforcement of

6    Judgments law," but don't explain what law or violation they're asserting.  Complaint at

7    ¶ 138.  They rely only on bluster and presumption.

8        This does not meet the heightened pleading standard for  invoking the sham

9    exception.  *Or. Natural Res. Council*, 944 F.2d at 533 (9th Cir. 1991).  Rather, this

10    amounts to nothing but the conclusory assertions of "misrepresentation" or "false

11    affidavits" that the Ninth Circuit has repeatedly rejected.  Id., *Omni Res. Dev. Corp.*,

12    739 F.2d at 1414.

13        Therefore, *Noerr-Pennington* immunity requires dismissal of the case.

14    **C.    PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO STATE A**

15    **RICO CLAIM**

16        Under 18 U.S.C. § 1962(c), "[t]he elements of a civil RICO claim are as follows:

17    (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known

18    as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'"  *Living*

19    *Designs, Inc. v. Dupont de Nermours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005). RICO

20    claims are governed by the heightened pleading standards of Federal Rule of Civil

21    Procedure 9(b), requiring that facts be pleaded with particularity.  *Moore v. Kayport*

22    *Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("We have applied the

23    particularity requirements of [R]ule 9(b) to RICO claims."); *Alan Neuman Productions,*

24    *Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1988) (dismissing RICO claims because

25    predicate acts of mail and wire fraud were not plead with specificity required by Rule

26    9(b).)

27        Though lengthy, the Complaint is overwhelmingly conclusory and fails to plead

28    crucial elements of RICO.

### 1.    Plaintiffs Fail to Allege a RICO Enterprise

First, the Complaint does not plead a RICO enterprise because it does not state facts distinguishing an enterprise from its alleged predicate acts.

A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007).  To establish such an enterprise a plaintiff must describe "evidence of an ongoing organization, formal or informal," and "evidence that the various associates function as a continuing unit." *Id.*  However, a RICO enterprise must be "an entity separate and apart from the pattern of [racketeering] activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981).  Put another way, "[t]he alleged enterprise must exist separate and apart from that inherent in the perpetration of the alleged [activity]." *Liam Meyer Irrevocable Tr. v. Chan*, No. 2:23-CV-1472 KJM DB PS, 2024 WL 557765, at *3 (E.D. Cal. Feb. 12, 2024); *Nelson v. Nelson*, No. 2:17-CV-1333-EFB, 2018 WL 1392885, at *4 (E.D. Cal. Mar. 20, 2018) (same); *Boat People S.O.S., Inc. v. VOICE*, No. 8:24-CV-00135-DOC-DFMX, 2024 WL 3914508, at *10 (C.D. Cal. July 31, 2024) (same).

Here, the Complaint repeatedly identifies the alleged enterprise by ***what it did*** – that is, it describes the enterprise by detailing the alleged predicate acts it ascribes to the Defendants.  The first time the Plaintiffs even attempt to define the enterprise is near the end of the Complaint – and then it simply claims in conclusory form that it's made up of all of the Defendants in the case and its purpose is to "preserve the King family's wealth for the benefit and eventual inheritance of JG while simultaneously preventing Plaintiffs from ever collecting their judgments."  Complaint at ¶¶ 208-209.  But the Complaint describes and defines the enterprise only by ascribing to it the alleged predicate acts, not by describing any existence "separate and apart from that inherent in the perpetration" of those acts.  *See, e.g., Liam Meyer Irrevocable Tr.* at * 3.

This failure is a particular problem in this case because Plaintiff concedes that the Defendants *started out* interrelated by mutual or family ownership, by business

partnership, by attorney-client relationships.  Complaint at ¶ 3.  Put another way, the Complaint's own allegations show that the Defendants already worked together for reasons of family, common ownership, business relationships, or attorney-client relationships.  Allegations that merely describe that defendants "are associated in a manner directly related to their own primary business activities" are insufficient to show a RICO enterprise.  *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202 (C.D. Cal. 2011) (same); *Downeys Hyundai, Inc. v. Amin*, No. 5:25-CV-00357-MRA-DTB, 2025 WL 3692156, at *5 (C.D. Cal. Dec. 16, 2025) (same).

Therefore, Plaintiffs have failed to allege facts sufficient to show the existence of a RICO enterprise that exists separate and apart from what is inherent in the predicate acts it claims.

### 2.    Plaintiffs Fail to State Facts Establishing Any Predicate Acts, Let Alone for Each Defendant

Second, Plaintiffs do not allege specific facts sufficient to establish *any* predicate acts, let alone tie each defendant to at least two predicate racketeering acts and demonstrate that they are involved in the operation or management of the alleged enterprise.

Plaintiffs must plead RICO predicate acts with particularity.  *Moore*, 885 F.2d at 541; *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d at 1392-93.  In particular, when the predicate acts sound in fraud – as they do here – Plaintiffs must identify the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  *Moore*, 885 F.2d at 541; *Alan Neuman Prods., Inc.*, 862 F.2d at 1392–93; *Lancaster Community Hospital v. Antelope Valley Hospital Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (holding with respect to the predicate act of mail fraud that a plaintiff must allege with "particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme").

Similarly, [t]he requirements of § 1962(c) must be established as to **each
individual Defendant**.  *Keel v. Schwarzenegger*, No. CV0807591RMTVBK, 2009 WL
1444644, at *6 (C.D. Cal. May 19, 2009)  A RICO Complaint cannot state a claim
against multiple defendants describing racketeering activity as an undifferentiated
whole; it must tie **each defendant** to two predicate acts. "Where RICO claims under §
1962(c) are asserted against multiple defendants, a plaintiff must allege at least two
predicate acts by each defendant." *Comm. to Protect our Agric. Water v. Occidental
Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1177 (E.D. Cal. 2017); *In re WellPoint, Inc.
Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012) ("[w]here
RICO is asserted against multiple defendants, a plaintiff must allege at least two
predicate acts by each defendant."); *RJ v. Cigna Health & Life Ins. Co.,* 625 F. Supp. 3d
951, 961 (N.D. Cal. 2022) (same).  A complaint may not "lump Defendants together
without identifying which Defendants are alleged to have committed which crimes on
what occasions" because that does not provide "adequate notice to respond individually
as to the alleged predicate acts." *Vaughan v. Wardhaugh*, No. 23-CV-02879-RFL, 2024
WL 2853972, at *2 (N.D. Cal. May 10, 2024); *Villarroel v. Recology Inc.*, 775 F. Supp.
3d 1050, 1070 (N.D. Cal. 2025) (same).

Finally, a defendant is not liable for civil RICO "unless one has participated in
the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507
U.S. 170, 183 (1993).  The particularity requirement applies to this requirement as well.
Conclusions are not enough:  a complaint fails to state a claim unless it alleges "*facts
demonstrating that each defendant conducted or participated in the conduct of the
enterprise's affairs, i.e. participated in the operation or management of the enterprise
itself. Eclectic Props. E., LLC v. Marcus & Millichap Co.*, No. C-09-0511 RMW, 2010
WL 384736, at *4 (N.D. Cal. Jan. 29, 2010); *Lee v. Gates*, No. CV0103085DTCTX,
2001 WL 1098070, at *7 (C.D. Cal. Sept. 10, 2001) (same).

Plaintiffs do not even attempt to meet these pleading requirements in the
Complaint.  First, consider their total failure to specify what predicate acts of

racketeering activity they claim.  Plaintiffs use the term "predicate acts" once, to assert
that they are "described herein," which they are not.  Complaint at ¶ 227.  Plaintiffs
repeatedly use the term "racketeering activity" to characterize their claims but fail to tie
that term to any specific acts.  For instance, Plaintiffs allege:

> Defendants' racketeering acts consisted of, but are not limited to, multiple
> acts of mail or wire fraud.  Additionally, Defendants have engaged in
> obstruction of justice and made numerous false statements of fact and law
> in courts of various jurisdictions as outlined above.  Complaint at ¶ 225.

But Plaintiffs don't offer any *specifics*.  They repeatedly invoke mail fraud, wire
fraud, obstruction of justice, and perjury in a conclusory way, but do not identify the
"time, place, and specific content of the false representations as well as the identities of
the parties to the misrepresentation."  *Moore*, 885 F.2d at 541.  They don't identify
specific fraudulent statements and who made them or when or to whom.  They don't
identify specific false statements made to courts, in what documents.  They assert
money laundering but don't identify specific transactions, or identify how the
transactions involved proceeds from a specified illegal activity.  *Metaxas v. Lee*, 503 F.
Supp. 3d 923, 938 (N.D. Cal. 2020).  They offer only two hundred paragraphs of
conclusions and generalities.

Since Plaintiffs do not describe specific predicate acts, it is unsurprising that they
do not even attempt to connect two specific predicate acts to each Defendant.  Once
again, they rely on conclusory and en masse statements.  This falls short of the
particularity requirement.  *Pineda v. Saxon Mortgage Services,* No. SacV 08-1187 JVS,
2008 WL 5187813, at *4 (C.D. Cal. Dec. 10, 2008) ("It is not enough for [plaintiff] to
rely on mere labels and conclusions" to establish a RICO claim but rather, plaintiff must
give each defendant notice of the particular predicate act it participated in and must
allege each predicate act with specificity); *Downeys Hyundai, Inc. v. Amin*, No. 5:25-
CV-00357-MRA-DTB, 2025 WL 3692156, at *6 (C.D. Cal. Dec. 16, 2025) ("it is
insufficient for Downey to allege that the Conspirator Defendants collectively engaged

27

1   in certain improper activities without specifying the time, place, and nature of those

2   activities as to each specific Defendant.")

3        Nor do Plaintiffs plead *facts* establishing that each Defendant was involved in the

4   operation or management of the enterprise.  Instead, they rely on conclusory claims

5   about roles in management or operation without any specific facts showing conduct on

6   any specified occasion.  Complaint at ¶ 52, 121m.

7        Even Plaintiffs' overarching theories of the case, on which their vague claims of

8   fraud rest, are mere conclusions without citation to any authority in support:

9        • Plaintiffs' entire premise is that it is inherently wrongful and even criminal for

10          a closely related individual or entity to acquire or hold the debt of another,

11          because that debt may make it financially infeasible for junior debtholders to

12          foreclose or otherwise enforce their rights.  But Plaintiffs say so *ipse dixit* –

13          they supply no citation to any law or authority prohibiting holding debt that

14          way.

15       • Plaintiffs assert that it is wrongful for a creditor to refrain from enforcing and

16          collecting upon debt, even if the debt is one of a parent or family member.

17          Specifically, they complain that Defendant JG King, through JGK

18          Construction, acquired the deed of trust encumbering the property where his

19          elderly parents live and did not foreclose on it and kick them out.  Complaint

20          at ¶¶ 155-158, 221j.  This is a bold claim for which Plaintiffs again offer no

21          supporting authority.

22       • Plaintiffs repeatedly complain that transactions violated charging orders.  But

23          Plaintiffs do not and cannot cite provisions of those charging orders that

24          protect them – because they cannot.  Plaintiffs cannot offer authority for the

25          proposition that an alleged violation of a charging order designed to protect

26          one creditor is fraud against an entirely different creditor.

27       In short, Plaintiffs' global theories of wrongdoing are conclusory soundbites that

28   are not a substitution for specific allegations sufficient to identify particular predicate

BROWN WHITE & OSBORN
A T T O R N E Y S

acts that each Defendant committed.  This falls far short of the pleading standard
required to sustain a claim of relief under RICO.  The Court should dismiss the
Complaint.

## D.    PLAINTIFFS' FAILURE TO PLEAD A SUBSTANTIVE RICO CLAIM
PRECLUDES THEIR RICO CONSPIRACY CLAIM

Plaintiff's Second Claim for Relief is for a civil RICO conspiracy in violation of
18 U.S.C. § 1962(d).  That claim falls with Plaintiff's first claim for relief.  The failure
adequately to plead a substantive violation of RICO precludes a claim for conspiracy.
*Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *Sanford v.
MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) ("Because we conclude that the
section 1962(c) claim cannot be saved by amendment, it follows that the section
1962(d) claim also cannot be saved.").

Therefore, the Court should dismiss the Second Claim for Relief with the First.

## V.    CONCLUSION

Based on the foregoing, the Court should dismiss the Complaint in its entirety
without leave to amend.

DATED:   February 27, 2026          Respectfully submitted,

BROWN WHITE & OSBORN LLP


By   s/Kenneth P. White

KENNETH P. WHITE
KARINEH DARBINIAN
Attorneys for Defendants
1023 Monterey Investors LLC; 1035
Monterey Investors LLC; A.J. Spurs, Inc.,
Buelton; Addie Street Land Group LP; Akro
Real Estate Partners LLC; Distinctive
Resorts, Inc.; Cliffs Resort LLC; Fernwood
Resort, LLC; Higuera Brew LLC; JGK
Construction LLC; John G. King,
Individually and as Trustee of the JG King
Living Trust, Dated February 25, 2021; Los

29

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lobos Investments LLC; Mission Grove
Associates; Montalban Street Group;
Spanish Vineyards LLC; Sycamore Mineral
Springs LLC; The Seaventure Resort, LLC;
The Vineyards At Spanish Springs, LLC

NOTICE OF MOTION AND MOTION TO DISMISS