**UMHOFER, MITCHELL & KING LLP**
Matthew Donald Umhofer (SBN 206607)
Margaret E. Dayton (SBN 274353)
Jonas P. Mann (SBN 263314)
767 S. Alameda St., Suite 270
Los Angeles, California 90021
Telephone:(213) 394-7979
matthew@umklaw.com
peggy@umklaw.com
jonas@umklaw.com

*Attorneys for Defendants ORKA Real Estate
Partners LLC, Apple Farm Collections-SLO,
Inc., and Robin L. Rossi in all capacities*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORONITAS HOLDINGS, LLC, a Wyoming limited liability company; and WOLVERINE ENDEAVORS VIII, LLC, a California limited liability company, | Case No. 2:25-cv-11946-JFW(SKx) |
| | *Hon. John F. Walter* |
| Plaintiffs, | **DEFENDANTS APPLE FARM COLLECTIONS-SLO, INC., ORKA REAL ESTATE PARTNERS LLC, ROBIN L. ROSSI, an individual; ROBIN L. ROSSI as Trustee of THE ROBIN L. ROSSI LIVING TRUST U/D/T OCTOBER 19, 1990 a/k/a ROBIN L. ROSSI LIVING TRUST'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| v. | |
| 1023 MONTEREY INVESTORS LLC, a California limited liability company; 1035 MONTEREY INVESTORS LLC, a California limited liability company; A.J. SPURS, INC., BUELLTON, a California corporation; ADDIE STREET LAND GROUP LP, a California limited partnership; AKRO REAL ESTATE PARTNERS LLC, a California limited liability company; APPLE FARM COLLECTIONS-SLO, INC., a California corporation; BLACK CHAPS LLC, a California limited liability company; BOUTIQUE HOTEL COLLECTION, INC., a California corporation; DISTINCTIVE RESORTS, INC., a California corporation; CLIFFS RESORT LLC, a California limited liability company; FERNWOOD RESORT, LLC, a California limited liability company; HIGUERA BREW LLC, a California limited liability company; JGK CONSTRUCTION LLC, a California limited liability company; CAROLE D. | **Hearing**<br>Date:   Monday, June 1, 2026<br>Time:   1:30 p.m.<br>Place:   Courtroom 7A<br><br>Complaint filed:    December 17, 2025 |

---

*ROSSI DEFENDANTS' MOTION TO DISMISS*

1  KING, an individual; CAROLE D.
   KING, as Trustee of the JOHN AND
2  CAROLE KING FAMILY TRUST,
   DATED APRIL 20, 2006; JOHN G.
3  KING, an individual; JOHN G. KING,
   as Trustee of the JG KING LIVING
4  TRUST, DATED FEBRUARY 25,
   2021; JOHN E. KING, an individual;
5  JOHN E. KING, as Trustee of the
   JOHN AND CAROLE KING
6  FAMILY TRUST, DATED APRIL 20,
   2006; LANA LUCAS, an individual;
7  LOS LOBOS INVESTMENTS LLC, a
   California limited liability company;
8  PAUL G. METCHIK, an individual;
   MISSION GROVE ASSOCIATES, a
9  California general partnership;
   MONTALBAN STREET GROUP, a
10 California general partnership;
   MICHAEL NELSON, an individual;
11 ORKA REAL ESTATE PARTNERS
   LLC, a California limited liability
12 company; ROBIN L. ROSSI, an
   individual; ROBIN L. ROSSI as
13 Trustee of THE ROBIN L. ROSSI
   LIVING TRUST U/D/T OCTOBER
14 19, 1990 a/k/a ROBIN L. ROSSI
   LIVING TRUST; SPANISH
15 VINEYARDS LLC, a California
   limited liability company;
16 SYCAMORE MINERAL SPRINGS
   LLC, a California limited liability
17 company; THE SEAVENTURE
   RESORT, LLC, a California limited
18 liability company; THE VINEYARDS
   AT SPANISH SPRINGS, LLC, a
19 California limited liability company;
   and DOES 1-100, inclusive,

20                    Defendant.

21

22

23

24

25

26

27

28

_ROSSI DEFENDANTS' MOTION TO DISMISS_

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 1, 2026, at 1:30 p.m. or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable John. F. Walter in Courtroom 7A of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, CA 90012-4565, Defendants ORKA Real Estate Partners LLC, Apple Farm Collections-SLO, Inc., and Robin L. Rossi in his individual capacity and as trustee of The Robin L. Rossi Living Trust u/d/t October 19, 1990 a/k/a Robin L. Rossi Living Trust ("Rossi Defendants") will, and hereby do, move the Court for an order dismissing with prejudice Plaintiffs Coronitas Holdings, LLC and Wolverine Endeavors VIII, LLC's ("Plaintiffs") Complaint (Dkt. 1) (the "Complaint") pursuant to Federal Rule of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).

This motion is made under FRCP 12(b)(1) and 12(b)(6) on the grounds that Plaintiffs lack standing to bring their claims because EWB and ICW cannot and did not expressly assign their purported RICO claims to Plaintiffs.

This motion is further made under FRCP 12(b)(6) on the grounds that all claims are barred by the statute of limitations.

This motion is further made under FRCP 9(b) and 12(b)(6) on the grounds that the Complaint fails to state a claim upon which relief can be granted.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Margaret E. Dayton, all pleadings, papers, and documents on file herein, and any other written or oral submissions that may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 and this Court's Standing Order, which took place on February 26, 2026, at approximately 1:00 p.m. PST, based upon which a Joint Statement as required by this Court's Standing Order was filed with the Court (Dkt. 69).

*ROSSI DEFENDANTS' MOTION TO DISMISS*

1    Dated: March 13, 2026                    Respectfully submitted,

2

3                                            *s/ Margaret E. Dayton*
                                             **UMHOFER, MITCHELL & KING LLP**
4                                            Matthew Donald Umhofer
                                             Margaret E. Dayton
5                                            Jonas P. Mann

6                                            *Attorneys for Defendants ORKA Real Estate*
                                             *Partners LLC, Apple Farm Collections-SLO, Inc.,*
7                                            *and Robin L. Rossi in all capacities*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*ROSSI DEFENDANTS' MOTION TO DISMISS*

# **<u>TABLE OF CONTENTS</u>**

**PAGE**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.   SUMMARY OF ALLEGATIONS & JUDICIALLY NOTICABLE
     FACTS ................................................................................................ 1

     A.   Allegations Pertaining to the Rossi Defendants ............................. 3

II.  DISMISSAL IS REQUIRED BECAUSE PLAINTIFFS LACK
     STANDING .......................................................................................... 5

III. PLAINTIFFS FAIL TO STATE A CLAIM, REQUIRING
     DISMISSAL .......................................................................................... 6

     A.   Plaintiffs' Claims Are Barred by the Statute of Limitations ........... 7

          1.   The Separate Accrual Rule Does Not Revive the Stale
               Claims ................................................................................... 10

          2.   The Complaint Does Not Allege Fraudulent
               Concealment .......................................................................... 11

     B.   Plaintiffs Fail to Adequately Allege a RICO Violation .................. 12

          1.   The Complaint Fails to Adequately Allege a RICO
               Enterprise .............................................................................. 12

          2.   Plaintiffs Do Not Allege Two Predicate Acts by Each
               Rossi Defendant .................................................................... 15

               a)   Plaintiffs Do Not Adequately Allege Mail and
                    Wire Fraud ..................................................................... 15

               b)   Plaintiffs Do Not Adequately Allege Money
                    Laundering .................................................................... 17

               c)   Plaintiffs Do Not Adequately Allege Obstruction
                    of Justice ....................................................................... 18

          3.   Plaintiffs Cannot Salvage Their Deficient Claim with
               Group Pleading ...................................................................... 20

          4.   Plaintiffs Cannot Premise Their Claims on Litigation
               Conduct .................................................................................. 20

     C.   Count II Fails To State a Claim and Must Be Dismissed ............... 25

IV.  CONCLUSION ................................................................................... 25

CERTIFICATE OF COMPLIANCE ................................................................... 27

1

# TABLE OF AUTHORITIES

2

**CASES**                                                                     **PAGE(S)**

3

621 Two, LLC v. Leggett & Platt, Inc.,
No. 21-55871, 2022 WL 16916365 (9th Cir. 2022).................................................... 9

4

Aiwohi v. Bank of Am., N.A.,
No. 22-00312, 2024 WL 3152636 (D. Haw. Mar. 28, 2024)............................... 20, 21

5

6

Alan Neuman Prods., Inc. v. Albright,
862 F.2d 1388 (9th Cir. 1988) ............................................................................... 16

7

Arthur Andersen LLP v. United States,
544 U.S. 696 (2005).............................................................................................. 19

8

9

Ashcroft v. Iqbal,
556 U.S. 662 (2009)........................................................................................... 6, 7

10

Azima v. Dechert LLP,
No. 22-CV-8728, 2024 WL 4665106 (S.D.N.Y. Sept. 26, 2024) ........................... 22

11

12

B&G Foods N. Am., Inc. v. Embry,
638 F. Supp. 3d 1122 (E.D. Cal. 2022) ............................................................ 23, 24

13

Baumer v. Pachl,
8 F.3d 1341 (9th Cir. 1993) ................................................................................... 25

14

15

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)................................................................................................ 7

16

Best v. Combs,
No. 24-9751, 2025 WL 1674393 (C.D. Cal. June 3, 2025)........................... 7, 10, 11

17

18

Best v. Combs,
No. 24-9751, 2025 WL 2977134 (C.D. Cal. Sept. 19, 2025)................................... 9

19

Brown v. Bank of Amer., N.A.,
ED CV 12-12-02009, 2014 WL 12707378 (C.D. Cal. Feb. 24, 2014), aff'd,
660 F. App'x 506 (9th Cir. 2016) ............................................................................ 6

20

21

Chandler v. State Farm Mut. Auto. Ins. Co.,
598 F.3d 1115 (9th Cir. 2010) ................................................................................. 5

22

Cirino v. Bank of Am., N.A.,
No. CV 13–8829, 2015 WL 3669078 (C.D. Cal. Feb. 10, 2015)............................ 13

23

24

Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.,
235 F. Supp. 3d 1132 (E.D. Cal. 2017) ............................................................ 13, 15

25

Conerly v. Westinghouse Elec. Corp.,
623 F.2d 117 (9th Cir. 1980) ................................................................................. 11

26

27

Destfino v. Reiswig,
630 F.3d 952 (9th Cir. 2011) ................................................................................. 20

28

iv

Downeys Hyundai v. Amin,
    No. 25-cv-00357, 2025 WL 3692156 (C.D. Cal. Dec. 16, 2025) .............................. 14

Edwards v. Marin Park, Inc.,
    356 F.3d 1058 (9th Cir. 2004) ................................................................................... 15

Feminist Women's Health Ctr. v. Codispoti,
    63 F.3d 863 (9th Cir. 1995) ......................................................................................... 6

Ford Motor Co. v. Knight Law Grp.,
    No. 2:25-cv-04550, 2025 WL 3306280 (C.D. Cal. Nov. 24, 2025) .......................... 14

Freeman v. Lasky, Haas & Cohler,
    410 F.3d 1180 (9th Cir. 2005) ................................................................................... 22

Freites v. Medina,
    No. 25-cv-20465, 2025 WL 1425491 (S.D. Fla. May 16, 2025) ............................... 22

Gamble v. Kaiser Found. Health Plan, Inc.,
    348 F. Supp. 3d 1003 (N.D. Cal. 2018) ..................................................................... 23

Goh v. Prima Fin. Grp., Inc.,
    No. CV 17-03630, 2017 WL 7887860 (C.D. Cal. Jul. 26, 2017) .............................. 25

Gomez v. Guthy-Renker, LLC,
    No. EDCV 14–01425, 2015 WL 4270042 (C.D. Cal. July 13, 2015) ....................... 12

Grimmett v. Brown,
    75 F.3d 506 (9th Cir. 1996) ................................................................................ passim

Gustafson v. BAC Home Loans Serv., LP,
    No. SACV 11-915, 2012 WL 7051318 (C.D. Cal. Dec. 20, 2012) ........................... 12

In re Jamster Mktg. Litig.,
    MDL No. 1751, 2009 WL 1456632 (S.D. Cal. May 22, 2009) ................................ 13

Kearney v. Foley & Lardner, LLP,
    590 F.3d 638 (9th Cir. 2009), aff'd,
    No. 22-55-496, 2022 WL 16570507 (9th Cir. 2022) ................................................ 22

Kearns v. Ford Motor Co.,
    567 F.3d 1120 (9th Cir. 2009) ..................................................................................... 7

Kelly v. United States,
    590 U.S. 391 (2020) ................................................................................................... 15

Kim v. Kimm,
    884 F.3d 98 (2d Cir. 2018) ........................................................................................ 21

In re Carole D. King,
    664 B.R. 162 (9th Cir. BAP 2024) ............................................................................ 21

Klehr v. A.O. Smith Corp.,
    521 U.S. 179 (1997) ................................................................................................... 11

Kottle v. Nw. Kidney Ctrs.,
   146 F.3d 1056 (9th Cir. 1998) ..........................................................23, 24

Lerman v. Joyce Int'l, Inc.,
   10 F.3d 106 (3d Cir. 1993) ....................................................................6

M&T Bank v. SFR Invs. Pool 1, LLC,
   963 F.3d 854 (9th Cir. 2020) .................................................................8

Mazzocco v. Lehavi,
   No. 14CV2112, 2015 WL 12672026 (S.D. Cal. Apr. 13, 2015) ........................16, 19

Metaxas v. Lee,
   503 F. Supp. 3d 923 (N.D. Cal. 2020)......................................................18

Meyer v. One W. Bank, F.S.B.,
   91 F. Supp. 3d 1177 (C.D. Cal. 2015)......................................................12

Moss v. U.S. Secret Serv.,
   572 F.3d 962 (9th Cir. 2009) .................................................................7

MSP Recovery Claims, Series LLC v. Jazz Pharms., PLC,
   No. 23-CV-01591, 2024 WL 3511635 (N.D. Cal. July 22, 2024) ........................5, 8

MSP Recovery Claims, Series, LLC v. Actelion Pharma. US, Inc.,
   No. 22-cv-07604, 2024 WL 3408221 (N.D. Cal. Jul. 12, 2024).........................5, 6

Pincay v. Andrews,
   238 F.3d 1106 (9th Cir. 2001) .............................................................7, 12

Rajaratnam v. Motley Rice, LLC,
   449 F. Supp. 3d 45 (E.D.N.Y. 2020) .......................................................22

Rotella v. Wood,
   528 U.S. 549 (2000)............................................................................9

Salazar-Luviano v. Mukasey,
   551 F.3d 857 (9th Cir. 2008) .................................................................20

Sanford v. MemberWorks, Inc.,
   625 F.3d 550 (9th Cir. 2010) .............................................................15, 16

Saul v. United States,
   928 F.2d 829 (9th Cir. 1991) .................................................................7

Sawicky v. Sykes,
   No. 21-cv-09023, 2022 WL 1567363 (C.D. Cal. Apr. 22, 2022).................22, 23, 24

Schreiber Distrib. Co. v. Serv-Well Furniture Co.,
   806 F.2d 1393 (9th Cir. 1986) ...............................................................12

Sosa v. DirecTV, Inc.,
   437 F.3d 923 (9th Cir. 2006) ................................................................22

Towne v. Robbins,
   No. Civ.CV02-1688, 2005 WL 139077 (D. Or. Jan. 20, 2005) ..........................11

vi

Turner v. Cook,
    362 F.3d 1219 (9th Cir. 2004) .......................................................... 25

UMB Bank, N.A. v. Guerin,
    89 F.4th 1047 (8th Cir. 2024) ......................................................... 21

UMG Recordings, Inc. v. Global Eagle Entm't, Inc.,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ........................................ 23

United States v. Aguilar,
    515 U.S. 593 (1995)......................................................................... 19

United States v. Koziol,
    993 F.3d 1160 (9th Cir. 2021) .............................................20, 21, 22

United States v. Marbella,
    73 F.3d 1508 (9th Cir. 1996) ......................................................... 18

United States v. Rogers,
    321 F.3d 1226 (9th Cir. 2003) ......................................................... 18

United States v. Smith,
    831 F.3d 1207 (9th Cir. 2016) ................................................. 19, 20

Vess v. Ciba-Geigy Corp. USA,
    317 F.3d 1097 (9th Cir. 2003) ......................................................... 12

Wellpoint, Inc. Out-of-Network "UCR" Rates Litig.,
    903 F. Supp. 2d 880 (C.D. Cal. 2012) ........................................... 15

**STATUTES**

18 U.S.C. § 1341...................................................................................... 15

18 U.S.C. § 1343...................................................................................... 15

18 U.S.C. § 1503............................................................................... 16, 18

18 U.S.C. § 1962...................................................................................... 25

*ROSSI DEFENDANTS' MOTION TO DISMISS*

## MEMORANDUM OF POINTS AND AUTHORITIES

This lawsuit is a gamble brought by speculators hoping to use the RICO statute to extract a windfall from debts they purchased for less than a penny on the dollar. The Complaint complains of an asset protection scheme but fails to allege how the scheme is fraudulent, instead relying on vague, conclusory statements. Plaintiffs allege that Defendants ORKA Real Estate Partners, Robin L. Rossi, individually ("Rossi") and through his Trust ("Rossi Trust"), and Apple Farm Collections-SLO, Inc. ("Apple Farm") (collectively "Rossi Defendants") have "acted in concert—lying, concealing, perjuring, falsifying records, and manipulating courts—to achieve a single goal: keeping the money in the family and protecting King Family assets, at all costs, from legitimate creditors." (¶ 4.[1]) But the Complaint never substantiates those allegations. Instead, it alleges routine litigation conduct and business transactions paired with unsupported conclusory statements of fraud. Moreover, Plaintiffs never allege a coherent theory as to why *Rossi* would commit fraud to protect *King Family* assets.

Other deficiencies abound. *First*, Plaintiffs lack standing. While case law conflicts on whether RICO claims are even assignable, those cases finding assignability require Plaintiffs to establish an express assignment. Plaintiffs have not done so here. *Second*, their claims are time barred by RICO's four-year statute of limitations. Plaintiffs' own Complaint alleges that the "asset protection scheme" that has operated "[f]or more than a decade." (¶¶ 1, 4.) As assignees, Plaintiffs stand in the shoes of the original judgment creditors and allege acts and known injuries more than four years old. *Third*, Plaintiffs fail to plead a RICO claim because they fail to allege two predicate acts or sufficiently identify an enterprise. Further, even if they could plead sufficient detail, the <u>Noerr-Pennington</u> doctrine immunizes the conduct alleged. *Fourth*, the conspiracy claim fails with the substantive RICO claim and because it is insufficiently alleged.

## I.    SUMMARY OF ALLEGATIONS & JUDICIALLY NOTICABLE FACTS

Plaintiffs are strangers to Defendants who became creditors of the Kings when

---

[1] All references to "¶" are to a paragraph in the Complaint, unless otherwise stated.

*ROSSI DEFENDANTS' MOTION TO DISMISS*

they purchased judgments issued to third parties. On May 17, 2021, Plaintiff Wolverine Endeavors III ("Wolverine") purchased for $1000 a September 14, 2011, judgment against the Kings in favor of East West Bank ("EWB Judgment"), which Wolverine renewed for $7,077,693.70. (¶ 20, Ex. 5; RJN 1.[2]) Plaintiff Coronitas Holdings, LLC acquired a judgment issued against the Kings in favor of Insurance Company of the West ("ICW Judgment"), which was assigned to Coronitas on April 30, 2025. (¶ 19.)

Plaintiffs' alleged injury is their inability to collect the EWB and ICW Judgments. (See, e.g., ¶¶ 5, 17, 207.) Plaintiffs allege this injury is caused by two categories of conduct that allegedly shield the Kings' assets from collection: (1) "members of the Enterprise act[] as sham 'creditors' of the Debtors [John E. and Carole King]," (¶ 6), which the Enterprise accomplished by acquiring senior judgments and liens and using them to block junior creditors from collecting against the Kings, (¶¶ 8-9) (2) members of the "Enterprise" engaged in intercompany transfers to funnel money to the Kings in a manner that shields it from the Kings' creditors. (¶¶ 110-121; Compl. Ex. 10, Ex. 11.)

First, Plaintiffs' "sham creditor" theory alleges that the scheme operated through acquisition and blocking use of two judgments held by Textron Financial Corp. ("Textron") (¶ 1, 6-7, 108-09.) In December 2010, Textron entered into a Satisfaction Agreement with the Kings, which reduced the amount required to satisfy the Textron Judgments to $4,000,000 in exchange for agreement to certain charging orders and payment terms by the Kings. (¶¶ 98-104.) Plaintiffs do not disclose that default terminates the Agreement and Textron may collect all sums due. (RJN 4.)

Plaintiffs allege that in January 2016, when $600,000 remained due under the Satisfaction Agreement, Defendant ORKA acquired the Agreement and the economic rights to the charging and assignment orders entered in 2012 in the underlying cases. (¶¶ 107-108.) Plaintiffs assert that once ORKA had these rights, the Enterprise used them to block collection efforts by junior creditors. (¶¶ 106, 108.) The alleged actions include

---

[2] References to "RJN" are exhibits to the accompanying Declaration of Margaret E. Dayton. They may be considered on this Motion through judicial notice and incorporation by reference, as stated in the accompanying Request for Judicial Notice.

foreclosure activity, recording "liens," purchasing and renewing judgments, filing charging and assignment orders and enforcement motions, and obtaining writs of attachment. (¶¶ 4, 8, 11, 12, 14, 100, 136, 140, 153, 182, 190, 217.) These filings allegedly "grossly inflated" the outstanding amount on the Textron Judgments by not disclosing the Satisfaction Agreement. (E.g., ¶¶ 11, 122-23, 135-37, 138, 140-42, 221(g).) As a result, "[w]hen Wells Fargo, EWB, ICW, and IFIC sought to collect on their judgments, they ran headlong into the Textron-derived liens now held by ORKA . . ." (¶ 108.) Plaintiffs allege that the Enterprise obtained additional senior judgments and liens for the same purpose and to the same end. (¶¶ 93, 155-57, 159.)

Second, Plaintiffs allege that for over a decade the Enterprise engaged in inter-company transfers that "pay the Debtors' personal and household expenses, issue credit cards for their daily use, and make distributions in violation of this Court's charging and assignment orders." (¶ 111.) The transfers allegedly conceal the Kings' assets and ensure the entity Defendants do not decrease the amount due under Satisfaction Agreement, leaving the Textron Judgments unsatisfied and in a collection-blocking position. (¶ 112.)

Overall, Plaintiffs allege that fraudulent filings have been made in at least nine different lawsuits for over ten years, deceiving each judicial officer because challenges to Defendants' filings either were—or should have been—made in the original court. And, no original judgment holder could stop this, despite being sophisticated insurance companies and banks, who by their very nature have extensive experience in collection.

## A. Allegations Pertaining to the Rossi Defendants

There is a fatal lack of detail regarding the Rossi Defendants. Plaintiffs allege nothing about the Rossi Trust[3] beyond a catch-all paragraph alleging that the 14 remaining "entity defendants" and "the various family and living trusts" "participated in the operation or management of the Enterprise by (i) serving as repositories for fraudulent transferred or shielded assets, (ii) making payments for the Debtors' personal

---

[3] For ease of reference, allegations pertaining to Rossi as trustee of the Rossi Trust are described as by the Rossi Trust.

3

living expenses, taxes, and obligations in deliberate violation of this Court's charging and assignment orders, and/or (iii) transferring funds or interests at the direction of John, JG, or Rossi, all for the purpose of hindering, delaying, and defrauding Plaintiffs." (¶ 221(m).) The Complaint identifies no asset owned or action taken by the Rossi Trust.

Plaintiffs address Apple Farm in the same catch-all paragraph (¶ 221(m).) and partially identify three purported transfers from Apple Farm, (¶ 114, Ex. 11). Exhibit 11 lists two transfers from Apple Farm to Boutique Hotel Collections on July 24, 2014, described as an "'Intercompany Loan,'" and "transfer to John E. King" supposedly "in violation of the 2012 Charging and Assignment Orders." (Id.; Compl. Ex. 11, Rows 02, 31.) Plaintiffs allege one $375,000 transfer by Apple Farm to Black Chaps, but provide no date or other context, instead grouping it with other transactions that allegedly occurred sometime "from December 31, 2015 to 2022." (¶ 114.)

Plaintiffs allege that Rossi and John King ("John") were business partners in the 1980s but that John's "family real estate empire" continued through John and JG King ("JG") in the "1990s and early 2000s." (¶¶ 61, 63, 66.) Plaintiffs do not allege Rossi and John's partnership continued after the 1980s, and Plaintiffs recount a series of lawsuits in which the Kings–but not Rossi–were found liable for loan defaults. (¶¶ 69-97.) Plaintiffs allege that Rossi "co-formed and co-owns ORKA and AKRO with JG," and did not make mortgage payments on the 2015 Monterey Street property following its foreclosure from April 2019 to March 2020. (¶ 221(e).) The remaining allegations concerning Rossi are acts by ORKA, not by Rossi. Plaintiffs allege that through ORKA: (1) in 2020, Rossi signed the assignment transferring the Textron Judgments from ORKA to AKRO; (2) in 2016, Rossi and JG capitalized ORKA with the final $600,000 Textron payment instead of satisfying the judgments; and (3) in 2018 and 2019, Rossi caused ORKA to execute a "sham" foreclosure on 2015 Monterey Street (a property Rossi and the Kings owned 50/50), "falsely inflat[ing] the outstanding judgment owed under the Vaquero Action in affidavits filed with the court." (¶¶ 221(e), 129, 105, 129.)

Plaintiffs allege that ORKA: (1) in 2016, acquired the Textron Judgments, (2)

*ROSSI DEFENDANTS' MOTION TO DISMISS*

"used fraudulently inflated balances to obtain writs of execution and to credit-bid $6,000 each for the Fremont Theater [in 2017] and Apple Farm Inn properties [in 2018 and 2019], [3] subsequently conveying the Fremont Theater parcels to" Defendants 1023 Monterey and 1035 Monterey and retaining Apple Farm in ORKA, and (4) continued to hold these properties and assert senior priority over Plaintiffs' liens. (¶¶ 221(g), 129, 11, 137.) Plaintiffs impermissibly attribute actions jointly to ORKA and AKRO here. (¶ 221(g).) However, other allegations make clear AKRO not ORKA, allegedly "intervened in enforcement proceedings" and foreclosed on Avila Hot Springs and 6900 Ontario. (¶ 137.) The Complaint does not identify the time and place of the alleged misstatements regarding the judgment balances, identify the specific false statements and why they are false, or include conveyance or foreclosure-related documents.

## II. DISMISSAL IS REQUIRED BECAUSE PLAINTIFFS LACK STANDING

Under Rule 12(b)(1), a party may move to dismiss a claim based on lack of subject matter jurisdiction, including the absence of standing. Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1123 (9th Cir. 2010). Here, Plaintiffs are not the original judgment holders and, their standing depends upon the assignment of the property at issue, the EWB and ICW Judgments, to them. (¶¶ 19, 20.)

"The Ninth Circuit has not ruled on whether RICO claims are assignable[,]" MSP Recovery Claims, Series LLC v. Jazz Pharms., PLC, No. 23-CV-01591, 2024 WL 3511635, at *6 (N.D. Cal. July 22, 2024) ("Jazz Pharms."), and courts in this district have reached different conclusions as to RICO claim assignability, MSP Recovery Claims, Series, LLC v. Actelion Pharma. US, Inc., No. 22-cv-07604, 2024 WL 3408221, at *16 (N.D. Cal. Jul. 12, 2024) ("Actelion") (discussing split and rejecting assignability). Under either legal framing, Plaintiffs have not shown assignment.[4]

---

[4] Even if assignments existed and were alleged, they would be invalid because the RICO claims here cannot be assigned to Plaintiffs, who were not injured in their business or property by any alleged conduct by the Rossi Defendants. See Actelion, 2024 WL 3408221, at *16 ("Because Congress limited RICO's private cause of action to those directly injured, assignees who are not directly injured are unable to bring RICO claims."); see also Jazz Pharms., 2024 WL 3511635, at *6.

If assignable, "[a] RICO claim can be assigned only through an express assignment." Brown v. Bank of Amer., N.A., ED CV 12-02009, 2014 WL 12707378, at *1 (C.D. Cal. Feb. 24, 2014) ("Brown I"), aff'd, 660 F. App'x 506 (9th Cir. 2016) ("Brown II"). "[A] RICO claim is not assigned 'automatically' upon the sale or transfer of corporate assets[,]" and "a 'partial' assignment of a RICO claim—wherein the assignor retains the right to pursue damage claims in its own right—is not effective." Actelion, 2024 WL 3408221, at *16 (citing Lerman v. Joyce Int'l, Inc., 10 F.3d 106, 112–13 (3d Cir. 1993)). Because subject matter jurisdiction requires standing, the plaintiff must present affidavits or other evidence to establish it, if the defendant moves to dismiss on that basis. Brown II, 660 F. App'x at 508–09. Dismissal is proper where a plaintiff fails to allege facts and provide proof of assignment. Id. at 509.

Plaintiffs' allegations of racketeering conduct go back "more than a decade," (¶ 4), predating their ownership of the Judgments; however, Plaintiffs do not allege assignment of any claims. The assignments assign only "all" "right, title, and interest, in and to the Judgment," (RJN 2, RJN 3), and Wolverine's Purchase Agreement only transfers ownership of the judgment and the judgment lien. (RJN 1.)

Even if the assignments did attempt to expressly assign the RICO claims, they are barred under the doctrine of claim splitting. ICW and EWB could have raised the RICO claims in the original courts where the judgments issued; because they did not, their purported assignees cannot raise them now. See Feminist Women's Health Ctr. v. Codispoti, 63 F.3d 863, 866 (9th Cir. 1995) ("RICO claims were ripe at the time the state court judgment was filed, and therefore, the [plaintiff] could have brought them in the earlier trial. Because the [plaintiff] did not, it is now barred from relitigating" them). Plaintiffs lack standing, warranting dismissal. Brown, 2014 WL 12707378, at *1.

## III. PLAINTIFFS FAIL TO STATE A CLAIM, REQUIRING DISMISSAL

Under Rule 12(b)(6) dismissal is warranted when a complaint does not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Conclusory statements, threadbare

recitals of the elements of a cause of action, and bare legal conclusions are inadequate. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). In addition, claims that "sound in fraud" must meet the heightened pleading requirements of Rule 9(b). Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). Leave to amend is not required where any "amendment would be futile[.]" Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991).

## A. Plaintiffs' Claims Are Barred by the Statute of Limitations

"The statute of limitations for civil RICO actions is four years." Pincay v. Andrews, 238 F.3d 1106, 1008 (9th Cir. 2001). The Ninth Circuit employs the two-part "injury discovery" rule for the civil RICO statute of limitations. Grimmett v. Brown, 75 F.3d 506, 511 (9th Cir. 1996). First, the "limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." Id. at 511. "The plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run." Id. at 510. "The second part of the 'injury discovery' rule is the 'separate accrual rule,' which provides that a new cause of action accrues for each new and independent injury . . ." Id. "For the separate accrual rule to apply, a plaintiff must identify an 'overt act' within the limitations period, and the overt act must (1) 'be a new and independent act that is not merely a reaffirmation of a previous act'; and (2) 'inflict new and accumulating injury on the plaintiff.'" Best v. Combs, No. 24-9751, 2025 WL 1674393, at *7 (C.D. Cal. June 3, 2025) ("Best I").

Plaintiffs complain of an "alleged asset protection scheme" that has operated for over ten years to "unlawfully control and shield millions of dollars in assets from lawful collection." (¶¶ 1, 4.) Members of the Enterprise allegedly acquired senior judgments and liens to act as sham creditors and block junior creditors from collecting on judgments against the Kings. (¶¶ 6, 8-9). ORKA acquired the primary senior judgments—the Textron Judgments—in 2016, and "then weaponized them against legitimate creditors." (¶ 8.) Textron publicly filed notices of the ORKA assignments in 2016. (RJN 5 & 6.) Plaintiffs allege that "[w]hen Wells Fargo, EWB, ICW, and IFIC sought to collect their

judgments, they ran headlong into the Textron-derived liens now held by ORKA—insider liens that appeared 'senior'" but were "self-dealing encumbrances designed to block enforcement by legitimate creditors." (¶ 108.) The purportedly "blocked" Wells Fargo, EWB, ICW, and IFIC judgments were entered in May 2011, September 2011, September 2017, and July 2016, respectively. (¶¶ 79, 84, 96, 89.)

Plaintiffs allege that beginning in 2009, the Enterprise has obtained additional senior judgments and liens (¶¶ 159, 155-57, 93) and since 2014 has used inter-company transfers for the same purpose, to the same end, and causing the same injury—preventing collection of the judgments. (¶¶ 110-121; Ex. 10, Ex. 11.)

Plaintiffs filed the Complaint on December 17, 2025. Because Plaintiffs knew of their injury before December 17, 2021, their claims are untimely. See Grimmet, 75 F.3d at 510. Plaintiffs' alleged injury is the inability to collect the EWB and ICW Judgments. The Complaint admits that this injury occurred "[w]hen [] EWB, [and] ICW [] sought to collect on their judgments." (¶ 108.) The EWB Judgment was assigned to Wolverine no later than May 2021, (¶ 20); therefore, any collection efforts by EWB—and EWB's awareness of Defendants' alleged efforts to frustrate them—must have occurred before that date. Even assuming valid assignment, as EWB's assignee, Wolverine now stands in EWB's shoes, and its claims are barred by the same statute of limitations defense applicable to EWB. M&T Bank v. SFR Invs. Pool 1, LLC, 963 F.3d 854, 858 (9th Cir. 2020) ("'an assignee stands in the shoes of his assignor, deriving the same but no greater rights and remedies than the assignor then possessed' and therefore receives the same limitations period as the assignor"); Jazz Pharms., 2024 WL 3511635, at *7 (the "question is generally what the *Assignors* knew and when").

In fact, Wolverine undeniably knew of its injury when it acquired the judgment. On March 19, 2021, Wolverine acquired the EWB Judgment for $1000 plus a percentage of Wolverine's net recovery under the judgment. (RJN Ex. 1) The Purchase Agreement states the principal amount of the judgment was $5,434,547.68, of which $1,900,000 was satisfied, (id. at 11)—reflecting a $3,534,547.68 difference between Wolverine's

*ROSSI DEFENDANTS' MOTION TO DISMISS*

cash purchase price and the principal amount of the judgment <u>before</u> prejudgment interest. Indeed, on June 21, 2021, Wolverine renewed the EWB Judgment for $7,077,693.78. (RJN 1 at 29.) Wolverine cannot plausibly claim that it was unaware of "the inability to collect on [its] judgment," (¶ 205), when it purchased the $7.7 million EWB Judgment in March 2021 for $1,000. Because Wolverine was aware of its injury before December 17, 2021, its claims are time-barred.

Coronitas' claims fail for the same reason: Plaintiffs allege that ICW's injury occurred when ICW "sought to collect on its judgment." (¶ 108.) The ICW Judgment was entered on September 14, 2017. (¶ 19; RJN 7.) ICW's collection efforts began no later than December 14, 2017, when ICW filed abstracts of judgment, (RJN 8), continued in April and June 2020 with Writs of Execution, (RJN 9 & 10) and then in September 2020 with an application for a judgment debtor exam, (RJN 11), which occurred in January 2021, (RJN 12). These collection efforts—beginning eight years before the Complaint was filed—put ICW on notice of its injury and commenced the limitations period. As ICW's assignee, Coronitas is subject to the same statute of limitations bar as ICW, and its claims are untimely. See <u>621 Two, LLC v. Leggett & Platt, Inc., No. 21-55871, 2022 WL 16916365, at \*1 (9th Cir. 2022)</u>.

Plaintiffs cannot salvage their time-barred claims by arguing that they knew only of the injury—and not the RICO scheme—before December 2021.[5] <u>Rotella v. Wood, 528 U.S. 549, 554 (2000)</u> (rejecting the injury and pattern discovery rule "under which a civil RICO claim accrues only when the claimant discovers, or should discover, both an injury and a pattern of RICO activity"); <u>Best v. Combs, No. 24-9751, 2025 WL 2977134, at \*4 (C.D. Cal. Sept. 19, 2025)</u> ("<u>Best II</u>") (awareness of nonreceipt of royalties—the injury—began statute of limitations despite allegation that plaintiff "did not discover the extent of the racketeering activity . . . until within the statutory period").

///

---

[5] Although not required, ICW learned of the alleged intercompany transfers no later than January 2021 through judgment debtor examinations in <u>ICW v. Spanish Springs II LLC</u>, Case No. 16-CV-0058 (SLO Super. Ct. 2016). (RJN 13 at ¶¶ 2, 3.)

9

**1.  The Separate Accrual Rule Does Not Revive the Stale Claims**

Acknowledging the statute of limitations problem, Plaintiffs allege "this action is timely" because "the criminal acts and related harm continue to this day." (¶ 217.) It then alleges three actions that occurred within the limitations period: (1) the Complicit Entities payment of $1.6 million for John's 2021 taxes; (2) foreclosure activity in February 2024 and related publication and recorded deeds in November 2025; and (3) January 2024 and August 2025 court filings extending ORAP liens in Case No. 21CV-0621 (SLO Super. Ct.). (¶¶ 217; 138.) These acts do not invoke the separate accrual rule.

"For the separate accrual rule to apply, a plaintiff must identify an 'overt act' within the limitations period, and the overt act must (1) 'be a new and independent act that is not merely a reaffirmation of a previous act'; and (2) 'inflict new and accumulating injury on the plaintiff.'" Best I, 2025 WL 1674393, at *7 (quoting Grimmet, 75 F.3d at 513). Where subsequent conduct is "merely a reaffirmation of the predicate acts" occurring previously and the prior injury inflicted then, the acts "do not bring [plaintiffs'] RICO claims within the limitations period." Best I, 2025 WL 1674393, at *7.

In Grimmet, the plaintiff's primary injury was the loss of her interest in a medical practice, which occurred during defendants' bankruptcy reorganization. 75 F.3d at 513–14. The plaintiff filed suit more than four years after the bankruptcy concluded, alleging four acts within the limitations period: (1) filing false documents in the bankruptcy court to conceal the fraud; (2) obstructing justice by concealing documents and falsely testifying; and (3) defrauding other junior owners. Id. at 514. The Ninth Circuit held, "[n]one of [these acts] are 'new and independent.' To begin with, all of them are part of the **same corporate reorganization/bankruptcy scheme**, and the injuries [plaintiff] claims are **identical to those alleged prior to that time**—the loss of her interest in [the medical] practice; **neither the acts nor the injuries are new**." Id. (emphasis added).

Here, the alleged transfers, court filings, and foreclosure activity that Plaintiff identifies within the limitations period are not "new and independent" acts but rather

"part of the same [alleged asset protection] scheme" resulting in injuries "identical to those alleged prior to that time"—the inability to collect on the judgments; "neither the acts nor the injuries are new." See id. at 14; see also Best I, 2025 WL 1674393, at *7 (separate accrual rule does not apply when subsequent acts "are merely a reaffirmation of the predicate acts that took place" earlier and "the injury inflicted then"); Towne v. Robbins, No. Civ.CV02-1688, 2005 WL 139077, at *3 (D. Or. Jan. 20, 2005) ("The continued payment of royalties cannot serve as a new injury under the separate accrual rule because it constitutes merely '[t]he same injuries resulting from the same policies continuing into the limitations period.'"). Even if these were new, independent acts, Plaintiffs do not allege any link to the Rossi Defendants or a new, resultant injury. The accrual rule requires Plaintiffs to allege new, independent acts and new injury, Best I, 2025 WL 1674393, at *7; "the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." Klehr v. A.O. Smith Corp., 521 U.S. 179, 190 (1997).

To avoid this, the Complaint misstates the law by alleging the action is "timely" because "the criminal acts and related harm continue to this day" and "these illegal acts in furtherance of the RICO conspiracy renew[] the statute of limitations." (¶ 217.) Yet, nearly 30 years ago, the United States Supreme Court rejected the last-predicate-act accrual rule for civil RICO claims. Klehr, 521 U.S. at 186–87.

## 2.  The Complaint Does Not Allege Fraudulent Concealment

"'[F]raudulent concealment' in the context of civil RICO embodies a 'due diligence' requirement." Id. at 196. "[T]he plaintiff 'must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts[.]" Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 120 (9th Cir. 1980). "Failure to plead these facts waives this tolling defense[,]" and warrants dismissal. Grimmet, 75 F.3d at 514.

The Complaint devotes only two sentences to fraudulent concealment, claiming: "many of the criminal acts herein were kept secret from Plaintiffs" and "[t]his fraudulent

11

concealment and delayed discovery of the wrongdoing provide further support for
extending the statute of limitations." (¶ 217.) This is inadequate. Plaintiffs do not allege
any concealed facts, any diligence Plaintiffs exercised, that Plaintiffs lacked actual or
constructive knowledge of the facts despite this diligence, or that Defendants actively
misled Plaintiffs and how. See Grimmet, 75 F.3d at 514. Nor could Plaintiffs ever allege
fraudulent concealment—they have had notice of their alleged injuries for years. See,
e.g., Pincay, 238 F.3d at 1110 (for fraudulent concealment, "plaintiffs 'must demonstrate
that they had *neither actual nor constructive notice* of the facts constituting their claims
for relief[,]" which is defeated by "constructive notice of their injuries").

## B. Plaintiffs Fail to Adequately Allege a RICO Violation

To state a claim under Section 1962(c), Plaintiffs must allege "(1) conduct (2) of
an enterprise, (3) through a pattern, (4) of racketeering activity" that was a "but for" and
proximate cause of Plaintiffs' injury. Meyer v. One W. Bank, F.S.B., 91 F. Supp. 3d
1177, 1182–83 (C.D. Cal. 2015). Plaintiffs assert predicate acts of: (1) mail and wire
fraud, (2) "obstruction of justice," and (3) money laundering. (¶ 225.) Mail and wire
fraud are subject to Rule 9(b)'s heightened pleading requirements. See Schreiber Distrib.
Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1399–1400 (9th Cir. 1986). Thus,
Plaintiffs must allege "the who, what, when, where, and how" of the fraudulent conduct.
Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003), and "set forth
what is false or misleading about a statement and why it is false." Gustafson v. BAC
Home Loans Serv., LP, No. SACV 11-915, 2012 WL 7051318, at *5 (C.D. Cal. Dec.
20, 2012). Plaintiffs fail to allege the RICO elements sufficiently in multiple critical
respects.

### 1. The Complaint Fails to Adequately Allege a RICO Enterprise

Under Section 1961(4), an associated-in-fact enterprise "must have at least three
structural features: a purpose, relationships among those associated with the enterprise,
and longevity sufficient to permit these associates to pursue the enterprise's purpose."
Gomez v. Guthy-Renker, LLC, No. EDCV 14–01425, 2015 WL 4270042, at *4 (C.D.

Cal. July 13, 2015). "[C]onduct consistent with ordinary business conduct and an ordinary business purpose[,]" is insufficient to allege a common purpose of a RICO enterprise. Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp., 235 F. Supp. 3d 1132, 1173–74 (E.D. Cal. 2017). A common purpose requires a showing "that 'the group engaged in enterprise conduct distinct from their own affairs.'" Id. at 1173.

As to Apple Farm, Plaintiffs allege that it engaged in three intercompany transfers. (¶¶ 114, 150; id., Ex. 11.) Companies transfer money. The Complaint alleges no facts supporting an improper purpose. As to the Rossi Trust, the Complaint alleges that the Trust served as a "repository" for fraudulently transferred assets, but does not even identify which assets it held, much less show they were fraudulently transferred. (¶ 221(m).) A trust holding assets is quintessential, routine business conduct. Plaintiffs' bare claim that the assets were "fraudulently" transferred does not show a purpose. See In re Jamster Mktg. Litig., MDL No. 1751, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) ("[w]ithout the adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose.").

As to Rossi and ORKA, Plaintiffs allege that Rossi incorporated ORKA, purchased judgments, and engaged in litigation-related conduct to collect on those judgments. (¶¶ 221(e), 221(g).) The acquisition of a judgment, formation of an entity, and then pursuit of collection through litigation is routine business conduct. Plaintiffs assert the common purpose of hiding the Kings' assets from legitimate creditors but allege no facts that support this. Their repeated, conclusory allegation that the conduct was pursued for this "improper purpose" or "illegal purpose," (e.g., ¶¶ 4, 52, 209, 214), is insufficient. See Comm. to Protect our Agric. Water, 235 F. Supp. 3d at 1174–75 (finding RICO enterprise insufficiently alleged where "the FAC pleads no specific facts indicating that defendants acted with an objective unrelated to ordinary business or government aims" and finding insufficient conclusory allegation that defendants acted with a common purpose "to maximize profits, increase revenues, and avoid the consequences of the contamination of fresh water"); Cirino v. Bank of Am., N.A., No.

13

CV 13–8829, 2015 WL 3669078, at *3–5 (C.D. Cal. Feb. 10, 2015) (dismissing RICO claim for failure to allege facts showing defendants "shared the alleged fraudulent purpose of the enterprise" despite insufficient allegation of a shared "common purpose" "to profit from concealing and assessing unnecessary property inspection fees").

Further, "when faced with two explanations for a defendant's behavior, a plaintiff cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the defendant's alternative explanation." Ford Motor Co. v. Knight Law Grp., No. 2:25-cv-04550, 2025 WL 3306280, at *14 (C.D. Cal. Nov. 24, 2025) (finding a common purpose was not alleged where "alternative explanations for Defendants' actions abound"). Instead, a plaintiff must allege facts "'tending to exclude the possibility that the alternative explanation is true'—i.e. that the Moving Defendants were engaged in the [challenged conduct] pursuant to their own ordinary business purpose." Downeys Hyundai v. Amin, No. 25-cv-00357, 2025 WL 3692156, at *5 (C.D. Cal. Dec. 16, 2025). The Complaint alleges nothing that makes it more plausible that Rossi and ORKA were acting for the Enterprise's purpose rather than their own.

Instead, Plaintiffs' allegations support the inference that Rossi and ORKA were acting for their own affairs. Indeed, the Complaint quotes purported JDE testimony from John that "he instructed Rossi and JG to 'get involved in this thing' to '**protect their** interest'"—not John's interest—and "'see what **they** [could] do to help **themselves**.'" (¶ 107 (emphasis added).) The Complaint itself alleges Rossi's own interest—his ownership of the other half of the foreclosed properties. (¶ 221(e) (alleging Rossi's 50% ownership interest was not foreclosed).) ORKA's own interest was pursuing collection on the Textron Judgments of which it was now the owner. Plaintiffs identify no communications by Rossi or ORKA that would suggest an association for purposes of shielding the Kings' assets from collection. (¶¶ 209-213 (identifying statements by John and JG).) Likewise, the allegations concerning alleged "coordinated insider communications" (¶¶ 187-192) do not include Rossi and the "Enterprise" is defined in this portion of the Complaint in a manner that excludes him. (¶¶ 187, 192.) These varying

definitions of the supposed enterprise members show that the enterprise is too fluid and unstable to constitute a RICO enterprise. Comm. to Protect our Agric. Water, 235 F. Supp. 3d at 1176 (dismissing RICO claim for "failure to allege a RICO enterprise with a common purpose, cohesive structure, and continuing operation" and instead relying on "isolated incidents each involving some but not all of the named defendants"). Indeed, the Complaint never alleges a structure for the enterprise and instead defines it entirely by its alleged activities; this is impermissible. See id.

### 2.  Plaintiffs Do Not Allege Two Predicate Acts by Each Rossi Defendant

"Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by *each* defendant." Wellpoint, Inc. Out-of-Network "UCR" Rates Litig., 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012).

#### a)  Plaintiffs Do Not Adequately Allege Mail and Wire Fraud

Plaintiffs fail to allege with particularity any act of mail or wire fraud by any Rossi Defendant, much less the requisite two acts for each. The mail and wire fraud statutes prohibit the use of the mails or wires "for the purpose of executing" a "scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses" 18 U.S.C. §§ 1341, 1343. "'[T]he money-or-property requirement of the latter phrase' also limits the former." Kelly v. United States, 590 U.S. 391, 398 (2020). Thus, the mail and wire fraud statutes do not criminalize all deceitful conduct, but are confined to fraudulent schemes to deprive victims of "money or property." Id.

Under Rule 9(b), Plaintiffs must identify the specific mailings or wire transmissions that form the basis of their claims. "To avoid dismissal for inadequacy under Rule 9(b), [the] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Sanford v. MemberWorks, Inc., 625 F.3d 550, 558 (9th Cir. 2010) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). "[A]llegations of predicate acts in the complaint concerning those elements of RICO [that] are entirely general" and devoid of "specifics of time, place, or nature of the

alleged communications" are "a fatal defect" under Rule 9(b). Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). Rather, Plaintiffs must allege specific facts supporting the existence of each predicate act. Sanford, 625 F.3d at 558. The Complaint's failure to do so here warrants dismissal as to the Rossi Defendants.

As to the Rossi Trust, no paragraph of the Complaint contains any substantive allegation specific to the Trust.

As to Apple Farm the Complaint partially identifies three purported transfers. (¶ 114, Ex. 11). A July 2014 transfer "designated as 'Intercompany Loan,'" without specifying the amount, a January 2020 transfer without specifying the purpose. (Id., Ex. 11, Rows 02, 31), and a $375,000 purported transfer by Apple Farm to Black Chaps, unaccompanied by a date or any other context, occurring sometime in the seven-year period from "from December 31, 2015 to 2022." (¶ 114.) Plaintiffs' failure to provide specific information fails Rule 9(b). See Sanford, 625 F.3d at 558. The Complaint alleges these transfers are fraudulent because they violated the 2012 Charging Orders, (¶ 115-16), however, no facts alleged support that legal conclusion. The Complaint does not and cannot allege that the Charging Orders prohibited Apple Farm from transferring funds or conducting business. Even if Plaintiffs supported, violating the Charging Orders is not mail or wire fraud, which require proof of a "scheme or artifice to defraud." Violating court orders may constitute contempt of court, but it is not a predicate act under RICO. Cf. Mazzocco v. Lehavi, No. 14CV2112, 2015 WL 12672026, at *12 (S.D. Cal. Apr. 13, 2015) ("Plaintiffs claim Defendants committed contempt of court by violating 18 U.S.C. § 1503, but § 1503 does not address contempt of court."). Nor have Plaintiffs alleged any basis for their standing to object to violation of the Charing Orders.

As to Rossi, the Complaint fails to identify any specific email, wire transfer, or mailing sent or received by Rossi; the date of any such communication; the contents of any such communication; the recipient(s) of any such communication; or how any such communication was fraudulent or furthered a fraudulent scheme. Therefore, it fails to allege a predicate act of mail or wire fraud. See Sanford, 625 F.3d at 558.

Instead, the Complaint offers only conclusory allegations. For example, it alleges that Rossi signed the assignment transferring the Textron Judgments from ORKA to AKRO for no consideration. (¶ 221(e).) But it does not allege any *transmission* by Rossi via mail or wire, nor identify any false statement *in* the assignment. The Complaint elsewhere alleges that Metchik on behalf of AKRO filed an affidavit, which was prepared and distributed using the mails or wires. (¶¶ 135-36.) But there is no basis to impute Metchik's or AKRO's conduct to Rossi. The Complaint does not identify a single false statement *made by Rossi*. The gravamen of Plaintiffs' theory appears to be that certain *transactions* involving ORKA and AKRO were improper. (See, e.g., ¶¶ 105-07.) But a transaction is not inherently "fraudulent" merely because Plaintiffs disagree with its legal effect or characterize it as part of an "asset protection scheme."

As to ORKA, Plaintiffs allege that ORKA acquired the Textron Judgments for $600,000, which was the final payment owed under the Satisfaction Agreement. (¶¶ 105-07.) According to Plaintiffs, the judgments "should have been deemed satisfied" by that payment, (¶ 14), but instead, ORKA "acquired the Textron Judgments for the express purpose of preventing their satisfaction," (¶ 221(g)). But Plaintiffs do not allege that the assignment itself involved any misrepresentation. Indeed, the Complaint acknowledges that Textron voluntarily assigned the judgments to ORKA after receiving the agreed-upon payment. (¶ 107.) There is no allegation that any Rossi Defendant even communicated with Textron, let alone deceived Textron, or that Textron would not have assigned the judgements absent some false statement.

Plaintiffs' theory appears to be that ORKA **should have** satisfied the judgments instead of acquiring them. But a party's choice to structure a transaction one way rather than another—particularly where the other party to the transaction (here, Textron) agreed to the arrangement—does not constitute fraud. Thus, Plaintiffs have not alleged any fraudulent conduct by the Rossi Defendants in further of a scheme to defraud.

### b)  Plaintiffs Do Not Adequately Allege Money Laundering

Plaintiffs name money laundering as a predicate act but do not allege it. Indeed,

the Complaint appears to fundamentally misunderstand that money laundering, by definition, involves money derived from criminal activity. A violation of § 1956 requires allegations that the defendant "(1) engaged in a financial transaction which involved proceeds from specified illegal activity, (2) knew the proceeds were from illegal activity, and (3) intended the transaction either to promote the illegal activity or to conceal the nature, source, or ownership of the illegal proceeds." Metaxas v. Lee, 503 F. Supp. 3d 923, 938 (N.D. Cal. 2020) (quoting United States v. Marbella, 73 F.3d 1508, 1514 (9th Cir. 1996)). Section 1957 requires that "(1) the defendant knowingly engaged in a monetary transaction; (2) he knew the transaction involved criminal property; (3) the property's value exceeded $10,000; and (4) the property was derived from a specified unlawful activity." Metaxas, 503 F. Supp. 3d at 938 (quoting United States v. Rogers, 321 F.3d 1226, 1229 (9th Cir. 2003)). Plaintiffs never allege that any money was obtained from criminal activity. In fact, Plaintiffs specifically allege that "[e]ach Enterprise entity generated its own revenues through ongoing business operations." (¶ 111.) This admits that the money involved is derived from legitimate business operations, not unlawful activity. Plaintiffs' objection to how the money is spent does not equal money laundering. Further, the only "money laundering" allegation as to a Rossi Defendant is the undated transfer from Apple Farm to Black Chaps, unaccompanied by any allegation of criminal activity. (¶¶ 114-15.).

### c) Plaintiffs Do Not Adequately Allege Obstruction of Justice

As a threshold matter, Plaintiffs do not identify *which* obstruction of justice statute they contend was violated. This omission is fatal. Different obstruction statutes have materially different elements, cover different types of conduct, and apply to different types of proceedings. The distinction matters because the Complaint alleges conduct in *both* federal court proceedings (¶¶ 12, 14, 122-136, 140-148, 162-196) and state court proceedings (¶¶ 138-139, 153). If Plaintiffs intended to invoke § 1503, their claims based on alleged obstruction of *state* court proceedings fail, because § 1503 applies only to

federal proceedings. Mazzocco, 2015 WL 12672026, at *11. In this respect, the Complaint fails to provide notice, and the obstruction allegations should be disregarded.

Even if the Complaint had specified the statute, Plaintiffs fail to sufficiently allege a corrupt intent and knowing engagement in specific conduct to obstruct official proceedings. United States v. Aguilar, 515 U.S. 593, 599 (1995); Arthur Andersen LLP v. United States, 544 U.S. 696, 704 (2005).

As to Apple Farm and the Trust, the Complaint does not allege any acts related to any legal proceedings whatsoever. It states only that they "serve[ed] as repositories" for assets, "ma[de] payments," and "transferr[ed] funds." (¶ 221(m).) No allegations would support predicate acts of obstruction of justice by Apple Farm or the Trust.

As to Rossi, the Complaint does not allege any statement or specific act by Rossi connected to any pending legal proceeding and how it was done with the intent to interfere or obstruct it. It alleges that Rossi signed the assignments transferring the Textron Judgments from AKRO to ORKA, but does not allege the connection to a legal proceeding or intended interference with it. (¶ 221(e).) Further, an assignment transferring judgments does not even involve any adjudication. It likewise alleges that Rossi "knowingly caused ORKA" to execute a sham marshal sale in 2018 on the 2015 Monterey Street property. (Id.) This presumably relates to the allegation that ORKA falsely inflated the judgment amount in affidavits in the Vaquero action to obtain writs of execution on that property. (¶ 129.) Plaintiffs do not identify specific alleged misrepresentations or how they obstructed or interfered. United States v. Smith, 831 F.3d 1207, 1217 (9th Cir. 2016) (obstruction requires proof that "actions would have had the natural and probable effect of interfering with the [legal proceedings]"). The presumably relevant affidavit was filed by ORKA in 2018 and contains a sworn statement by Metchik. (RJN 14) There is no basis to attribute the statements to Rossi or infer that he "caused ORKA" to file it. The accusatory allegation states that ORKA is "jointly control[led] with JG [King]," (¶ 221(e).), and elsewhere alleges that JG controls ORKA—with no mention of Rossi, (¶ 221(c).).

19

Nor does the Complaint allege obstruction by ORKA. It alleges that ORKA "used fraudulently inflated balances to obtain writs of execution" for the Fremont Theater and Apple Farm Inn. (¶ 221(g).) Elsewhere the Complaint alleges that Metchik "grossly inflated [the] balance of $5,137,620.42 on the larger of the two judgments" in 2017 or 2019. (¶ 11.) Again, the Complaint does not identify the specific dates the statements were made, and does not explain how the alleged misrepresentations obstructed or interfered with proceedings. The allegation fails. Smith, 831 F.3d at 1217.

The Complaint likewise does not sufficiently allege that any Rossi Defendant had the requisite intent for obstruction. Obstruction of justice requires proof of specific acts undertaken with corrupt intent. Salazar-Luviano v. Mukasey, 551 F.3d 857, 862 (9th Cir. 2008). A defendant is not liable for obstruction based on his status as a member of an alleged "enterprise" or as an owner of a company. Plaintiffs allege no facts from which intent can be inferred—there is no factual or rational basis alleged for why the Rossi Defendants would work to protect the *Kings' assets* for the *Kings' benefit*.

### 3.  Plaintiffs Cannot Salvage Their Deficient Claim with Group Pleading

Throughout the Complaint, Plaintiffs refer collectively to "the Enterprise," "Defendants," and "Members of the Enterprise" without differentiating among individual defendants. (¶¶ 52, 105-08, 221-25.) This "group pleading" cannot salvage their claims. "Rule 9(b) 'does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'" Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011).

### 4.  Plaintiffs Cannot Premise Their Claims on Litigation Conduct

Because Plaintiffs do not sufficiently allege facts regarding the transfers, the only remaining allegations pertain to Defendants' litigation related activity. Those allegations cannot form the basis of Plaintiffs' RICO claims for two independent reasons.

**First**, "litigation activity, standing alone, is insufficient to state a RICO claim in the Ninth Circuit." Aiwohi v. Bank of Am., N.A., No. 22-00312, 2024 WL 3152636, at *7 (D. Haw. Mar. 28, 2024) (citing United States v. Koziol, 993 F.3d 1160, 1174 (9th

Cir. 2021)). "[C]ourts concluded that RICO does not authorize suits by private parties asserting claims against business or litigation adversaries, based on litigation activities, and seeking treble damages, costs, and attorney's fees." Koziol, 993 F.3d at 1174 (discussing civil RICO cases). "The cases Koziol discussed echo the proposition that 'allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act.'" Aiwohi, 2024 WL 3152636, at *7 (quoting Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018)). Such claims would "inundate[e] federal courts with civil RICO actions that could potentially subsume all other state and federal litigation in an endless cycle where any victorious litigant immediately sues opponents for RICO violations." Aiwohi, 2024 WL 3152636, at *7 (quoting UMB Bank, N.A. v. Guerin, 89 F.4th 1047, 1055 (8th Cir. 2024)). "[T]he 'overwhelming weight of authority bar[s] a civil RICO claim based on the use of the mail or wire to conduct allegedly fraudulent litigation activities as predicate racketeering acts'" absent other out-of-court predicate acts. Aiwohi, 2024 WL 3152636, at *8 (collecting cases).

Here, the "endless cycle" of litigation is on full display. Plaintiffs (and their predecessors) pursued collection efforts in **at least**: two cases yielding the Plaintiff-owned judgments,[6] one collection action,[7] Spanish Springs II,[8] AKRO's collection case,[9] ICW's fraudulent conveyance action,[10] and two involuntary bankruptcy petitions.[11] The Complaint cannot plausibly allege that this purported RICO scheme avoided the detection of this many different tribunals. Yet, Plaintiffs' efforts were unsuccessful or abandoned: both bankruptcy petitions were dismissed, (RJN 15; RJN 16; In re Carole D. King, 664 B.R. 162 (9th Cir. BAP 2024)); ICW dismissed its fraudulent conveyance

---

[6] East West Bank v. John E. King, No. CGC-10-505989 (San. Fran. Super. Ct. 2010); Insurance Company of the West v. Spanish Springs II LLC, No. 16-CV-0058 (SLO Super. Ct. 2016).
[7] East West Bank v. John King, No. 21-cv-0708 (SLO Super. Ct. 2021)
[8] Textron Fin. Corp. v. Spanish Springs II, LLC, No. 2:09-cv-01205-JFW-KS (C.D. Cal. 2009); Textron Fin. Corp. v. Vaquero de los Robles, LLC, No. 2:09-cv-01204-JFW-KS (C.D. Cal. 2009).
[9] Textron Fin. Corp. v. Spanish Springs II, LLC, No. 21-cv-0621 (SLO Super. Ct. 2021).
[10] Ins. Co. of the W. v. Robin Rossi, et al., No. 24-cv-0780 (SLO Super. Ct. 2024).
[11] In re John E. King, No. 9:22-BK-10674-RC (C.D. Cal. BK 2022); In re Carole D. King, No. 9:22-BK-10673-RC (C.D. Cal. BK 2022).

*ROSSI DEFENDANTS' MOTION TO DISMISS*

action, (RJN 17); Plaintiffs' request to intervene in Spanish Springs II was denied, (RJN 18); AKRO's lien reissued over Wolverine's objection, (RJN 19; RJN 20); and its challenge to AKRO's lien in the EWB collection case failed, (RJN 21).

Now, Plaintiffs impermissibly pursue a civil RICO claim against their "litigation adversaries, based on litigation activities, and seeking treble damages, costs, and attorney's fees." See Koziol, 993 F.3d at 1174. However, "[a] civil RICO action in a neighboring federal district is not the appropriate mechanism to seek redress for false statements made in court filings by a litigation adversary." Rajaratnam v. Motley Rice, LLC, 449 F. Supp. 3d 45, 72 (E.D.N.Y. 2020). "[P]ermitting RICO claims for litigation activities raises 'serious questions of comity' since redress is sought from one federal court for litigation misconduct in a different federal, state, or international proceeding." Azima v. Dechert LLP, No. 22-CV-8728, 2024 WL 4665106, at *19 (S.D.N.Y. Sept. 26, 2024); see also Freites v. Medina, No. 25-cv-20465, 2025 WL 1425491, at *9 (S.D. Fla. May 16, 2025) ("allegations that Defendants improperly disclosed a limited amount of sealed materials in the Delaware case does not constitute racketeering activity but rather amounts to litigation activity involving bad faith litigation tactics, which should be properly handled by the judge presiding over the proceedings in Delaware"). Indeed, the California Court of Appeal recently rejected Wolverine's attempt to invalidate liens issued by the San Luis Obispo Superior Court in an appeal from an order of the San Francisco Superior Court because it was an improper "collateral attack." (RJN 21.)

**Second,** the Noerr-Pennington doctrine protects from liability "those who petition any department of the government for redress . . . ." Sosa v. DirecTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006); see also Sawicky v. Sykes, No. 21-cv-09023, 2022 WL 1567363, at *4 (C.D. Cal. Apr. 22, 2022) (recognizing doctrine applies to RICO) (citing Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 643-48 (9th Cir. 2009), aff'd, No. 22-55-496, 2022 WL 16570507 (9th Cir. 2022)). The Noerr-Pennington doctrine applies to an individual's general use of the judicial system, including "defensive pleadings." Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1184 (9th Cir. 2005). Likewise,

"communications between private parties are sufficiently within the protection of the Petition Clause to trigger the Noerr-Pennington doctrine, so long as they are sufficiently related to petitioning activity." Gamble v. Kaiser Found. Health Plan, Inc., 348 F. Supp. 3d 1003, 1027 (N.D. Cal. 2018). "Conduct incidental to a lawsuit," such as demand letters, cease and desist letters, decisions to accept or reject settlement offers, settlement demands, and discovery misconduct, are protected. UMG Recordings, Inc. v. Global Eagle Entm't, Inc., 117 F. Supp. 3d 1092, 1113 (C.D. Cal. 2015); Gamble, 348 F. Supp. 3d at 1027 (collecting authority).

Plaintiffs allege that the so-called scheme operates through the use of "legal instruments and proceedings" including "foreclosure sales, court orders, and transfers of title," "liens," (¶ 4), purchasing judgments, recording judgment liens, filing charging and assignment orders, (¶¶ 8, 100), obtaining writs of attachment to foreclose on properties, (¶ 11), renewing judgments, (¶ 12), filing enforcement motions, (¶ 14), and resisting involuntary bankruptcy petitions, (¶¶ 162-92). This is conduct incidental to a lawsuit is protected by the Noerr-Pennington doctrine. UMG Recordings, 117 F. Supp. 3d at 1113.

This conduct does not fall under any exceptions to Noerr-Pennington, which require a plaintiff to show: (1) an objectively baseless lawsuit and an unlawful motive; (2) a series of lawsuits under a policy of commencing litigation without regard to the merits and for an unlawful purpose; or (3) intentional misrepresentations to the court that "deprive the litigation of its legitimacy." Kottle v. Nw. Kidney Ctrs., 146 F.3d 1056, 1060 (9th Cir. 1998). The pleading standard "is less forgiving than the typical 12(b)(6) standard: the complaint must 'contain specific allegations demonstrating that the Noerr-Pennington protections do not apply.'" Sawicky, 2022 WL 1567363, at *4. Where, as here, the sham exceptions are based on fraud, Rule 9(b) applies. B&G Foods N. Am., Inc. v. Embry, 638 F. Supp. 3d 1122, 1127 (E.D. Cal. 2022).

Here, Plaintiffs do not sufficiently allege any Noerr-Pennington exception. Where the alleged misconduct occurred in cases where the defendant was defending itself, the plaintiff cannot show the defendant brought "an 'objectively baseless'" lawsuit or a

"series of lawsuits . . . for an unlawful purpose." Sawicky, 2022 WL 1567363, at *5. Of the nine lawsuits Plaintiffs identified, only one was brought by any defendant, AKRO. Plaintiffs also cannot show that Defendants took objectively baseless defense positions because the Complaint alleges that Defendants' efforts were successful: "the success of [defendant's] opposition to [plaintiff's] CON application conclusively demonstrates that the opposition was not objectively baseless." Kottle, 146 F.3d at 1063 "[A] winning lawsuit is, by definition, not objectively baseless." Id. Further, Plaintiffs would have to allege facts plausibly supporting an inference of improper purpose or lack of merit—not simply the conclusion. See B&G Foods, 638 F. Supp. 3d at 1132–33 (allegations that defendants extracted "millions of dollars" from extortionate suits resulting in nuisance settlements was insufficient absent "specific allegations about the defendants' motives or about why these cases lack merit" because it could mean either "(1) the lawsuits have merit or (2) the shakedown is a success"). Here, Plaintiffs' conclusory allegations are that Defendants had an improper purpose without any specific allegations about motives or why their litigation positions lacked merit. The second sham exception does not apply.

Nor do Plaintiffs sufficiently allege the third sham exception. "Because the third sham exception requires a showing of fraud," Rule 9(b) applies and particularity is required. B&G Foods, 638 F. Supp. 3d at 1133. In addition, Plaintiffs' "allegations [must] demonstrate that [Defendants] so misrepresented the truth to the [court] that the entire [] proceeding was deprived of its legitimacy." Kottle, 146 F.3d at 1063.

Here, Plaintiffs complain of vague misstatements and allude to "obstruction" efforts made by various Defendants (often unidentified) during collection proceedings. (¶¶ 12, 14, 52, 123, 129, 131, 136, 137, 138, 141, 162, 196.) Yet, Plaintiffs do not claim that the entire proceeding was "deprived of its legitimacy." Indeed, Plaintiffs do not dispute the determination of the King's liability in the Vaquero, Spanish Springs II, Wells Fargo, EWB, ICW, or IFIC Actions. Therefore, they cannot invoke the third sham exception for purported misstatements in these proceedings. Kottle, 146 F.3d at 1063.

The remaining actions are the two state-court judgment collection actions and the

24

involuntary bankruptcies. The Complaint does not allege the result of the state collection cases, much less how any purported misrepresentation delegitimatized them. As to the bankruptcies, the Complaint does not clearly identify any alleged misstatement with particularity, how it is false, and how that falsity deprived the bankruptcy proceedings of their legitimacy. In any event, two things are clear about the bankruptcy cases: (1) the Rossi Defendants were not involved; and (2) these issues were litigated, evidentiary hearings were held, and they were appealed to the Ninth Circuit. (¶¶ 176-86.)

### C. Count II Fails To State a Claim and Must Be Dismissed

Count II asserts a RICO conspiracy claim under 18 U.S.C. § 1962(d). Because Plaintiffs fail to allege a substantive RICO violation, their dependent conspiracy claim fails, and Count II must be dismissed. Turner v. Cook, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) ("Because appellants failed to allege the requisite substantive elements of a RICO claim under 18 U.S.C. § 1962(c), appellants' claim under 18 U.S.C. § 1962(d) . . . also fails."). Further, a RICO conspiracy claim must allege both "an agreement to conduct or participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts"; "mere association with the enterprise" is insufficient. Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir. 1993). The allegations must also show the defendant "was aware of the essential nature and scope of the enterprise and intended to participate in it." Id. Bare conclusions of these elements are insufficient, especially where, as here, Rule 9(b) applies. Goh v. Prima Fin. Grp., Inc., No. CV 17-03630, 2017 WL 7887860, at *3 (C.D. Cal. Jul. 26, 2017) ("where the predicate acts sound in fraud, the plaintiff must plead the [RICO] conspiracy with the particularity required by Rule 9(b)"). As to the Rossi Defendants, the Complaint is bereft of any factual allegations regarding any agreement, their awareness of the essential nature and scope of the enterprise, or facts to infer either. Thus, even if the Complaint alleged a substantive RICO claim, it does not allege a conspiracy claim against any Rossi Defendant.

### IV.   CONCLUSION

For the reasons above, Plaintiffs' Complaint should be dismissed with prejudice.

1    Dated:  March 13, 2026                    Respectfully submitted,

2

3                                              *s/ Margaret E. Dayton*
                                               **UMHOFER, MITCHELL & KING LLP**
4                                              Matthew Donald Umhofer
                                               Margaret E. Dayton
5                                              Jonas P. Mann

6                                              *Attorneys for Defendants ORKA Real Estate*
                                               *Partners LLC, Apple Farm Collections-SLO, Inc.,*
7                                              *and Robin L. Rossi in all capacities*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **CERTIFICATE OF COMPLIANCE**

2        The undersigned, counsel of record for Defendants ORKA Real Estate Partners

3    LLC, Apple Farm Collections-SLO, Inc., and Robin L. Rossi in all capacities, certifies

4    that this brief does not exceed 25 pages which complies with section 5(c) of the

5    Standing Order, Dkt. No. 10.

6

7    Dated: March 13, 2026         Respectfully submitted,

8

9                       */s/ Margaret E. Dayton*
                   **UMHOFER, MITCHELL & KING, LLP**

10                      Matthew Donald Umhofer
                   Jonas P. Mann

11                      Margaret E. Dayton

12                      *Attorneys for Defendants ORKA Real Estate*
                   *Partners LLC, Apple Farm Collections-SLO, Inc.,*

13                      *and Robin L. Rossi in all capacities*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*ROSSI DEFENDANTS' MOTION TO DISMISS*