Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
A. Alexander Lowder (SBN 269362)
*alowder@larsonllp.com*
Elizabeth Christianson (SBN 346406)
*echristianson@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Defendant PAUL G. METCHIK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CORONITAS HOLDINGS, LLC, a Wyoming limited liability company; and WOLVERINE ENDEAVORS VIII, LLC, a California limited liability company, | Case No. 2:25-cv-11946-JFW-SK |
| Plaintiffs, | **DEFENDANT PAUL G. METCHIK'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| vs. | Date: June 1, 2026<br>Time: 1:30 p.m.<br>Crtrm.: 7A – U.S. Courthouse – 350 W. First Street Los Angeles, CA 90012 |
| 1023 MONTEREY INVESTORS LLC, a California limited liability company; 1035 MONTEREY INVESTORS LLC, a California limited liability company; A.J. SPURS, INC., BUELLTON, a California corporation; ADDIE STREET LAND GROUP LP, a California limited partnership; AKRO REAL ESTATE PARTNERS LLC, a California limited liability company; APPLE FARM COLLECTIONS-SLO, INC., a California corporation; BLACK CHAPS LLC, a California limited liability company; BOUTIQUE HOTEL COLLECTION, INC., a California corporation; DISTINCTIVE RESORTS, INC., a California corporation; CLIFFS RESORT LLC, a California limited liability company; FERNWOOD RESORT, LLC, a California limited liability company; HIGUERA BREW LLC, a California limited liability company; JGK CONSTRUCTION LLC, a California limited liability company; CAROLE D. | Judge: Hon. John F. Walter |

LARSON
LOS ANGELES

1

KING, an individual; CAROLE D. KING, as Trustee of the JOHN AND CAROLE KING FAMILY TRUST, DATED APRIL 20, 2006; JOHN G. KING, an individual; JOHN G. KING, as Trustee of the JG KING LIVING TRUST, DATED FEBRUARY 25, 2021; JOHN E. KING, an individual; JOHN E. KING, as Trustee of the JOHN AND CAROLE KING FAMILY TRUST, DATED APRIL 20, 2006; LANA LUCAS, an individual; LOS LOBOS INVESTMENTS LLC, a California limited liability company; PAUL G. METCHIK, an individual; MISSION GROVE ASSOCIATES, a California general partnership; MONTALBAN STREET GROUP, a California general partnership; MICHAEL NELSON, an individual; ORKA REAL ESTATE PARTNERS LLC, a California limited liability company; ROBIN L. ROSSI, an individual; ROBIN L. ROSSI as Trustee of THE ROBIN L. ROSSI LIVING TRUST U/D/T OCTOBER 19, 1990 a/k/a ROBIN L. ROSSI LIVING TRUST; SPANISH VINEYARDS LLC, a California limited liability company; SYCAMORE MINERAL SPRINGS LLC, a California limited liability company; THE SEAVENTURE RESORT, LLC, a California limited liability company; THE VINEYARDS AT SPANISH SPRINGS, LLC, a California limited liability company; and DOES 1-100, inclusive,

Defendants.

DEFENDANT PAUL G. METCHIK'S REPLY IN SUPPORT OF MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 6

II.     PLAINTIFFS CONCEDE THEY LACK STANDING ..................................... 6

III.    THE COMPLAINT'S PLEADING DEFECTS CANNOT BE CURED ......... 7

        A.    The RICO Claims Are Time-Barred ....................................................... 7

        B.    Metchik's Petitioning Activity is Immunized by *Noerr-Pennington* ................................................................................................ 9

        C.    Plaintiffs Fail to State RICO Claims Against Metchik ........................ 13

              1.    The RICO Claims Fail to Meet Rule (9)(b) .............................. 13

              2.    Plaintiffs Fail to Plausibly Allege Remaining Elements of a Civil RICO Claim to State a Claim Against Metchik ............. 16

              3.    Plaintiffs' Derivative Civil RICO Conspiracy Claims Fails ...... 17

IV.     CONCLUSION ................................................................................................ 17

LARSON
LOS ANGELES

DEFENDANT PAUL G. METCHIK'S REPLY IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988) ...................................................................................................7

*Boone v. Redevelopment Agency of City of San Jose*,
841 F.2d 886 (9th Cir. 1988).....................................................................................4

*Brown v. Bank of Am., N.A.*,
No. ED CV 12-02009 TJH, 2014 WL 12707378 (C.D. Cal. Feb. 24,
2014) ..........................................................................................................................1

*Cho v. Hyundai Motor Co., Ltd.*,
636 F. Supp. 3d 1149 (C.D. Cal. 2022)..............................................................6, 10

*City of Columbia v. Omni Outdoor Advert., Inc.*,
499 U.S. 365 (1991) ..................................................................................................7

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004)...................................................................................9

*Grimmett v. Brown*,
75 F.3d 506 (9th Cir. 1996)......................................................................................3

*Kottle v. Nw. Kidney Centers*,
146 F.3d 1056 (9th Cir. 1998) & *PRE II*........................................................4, 5, 7

*Omni Resource Development Corp. v. Conoco, Inc.*,
739 F.2d 1412 (9th Cir. 1984)...................................................................................8

*Pilgrim v. Gen. Motors Co.*,
No. CV 15-8047-JFW (EX), 2020 WL 7222098 (C.D. Cal. Nov. 19,
2020) ...............................................................................................................1, 10, 11

*Professional Real Estate Investors, Inc. v. Columbia Pictures
Industries, Inc.*,
508 U.S. 49 (1993) ....................................................................................................5

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 1998).....................................................................................5

LARSON
LOS ANGELES

DEFENDANT PAUL G. METCHIK'S REPLY IN SUPPORT OF MOTION TO DISMISS

*United States v. Ryan*,
    455 F.2d 728 (9th Cir. 1971) ...............................................................................10

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) .............................................................................11

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012).................................................................2

**Federal Statutes**

Racketeer Influenced and Corrupt Organizations Act (RICO) .......................*passim*

**California Statutes**

Cal. Civ. Code
    § 2924h ............................................................................................................6, 12

**Other Authorities**

Fed. R. Civ. Proc.
    Rule 9.....................................................................................................................9
    Rule 9(b) ............................................................................................................8, 9

LARSON
LOS ANGELES

DEFENDANT PAUL G. METCHIK'S REPLY IN SUPPORT OF MOTION TO DISMISS

## I.    INTRODUCTION

Plaintiffs Coronitas Holdings, LLC and Wolverine Endeavors VIII, LLC's (collectively, "Plaintiffs") Complaint suffers from a myriad of fatal flaws. Plaintiffs' Opposition fails to identify any basis for Plaintiffs to move forward with any claim against Defendant Paul G. Metchik ("Metchik"). Plaintiffs admit that EWB and ICW did not assign any RICO claims to Plaintiffs and thus lack standing to bring their stale RICO claims. Moreover, any RICO claims arising from the inability to collect on the EWB and ICW judgments are time-barred—the Complaint alleges that the conduct at issue started in 2016 when Textron assigned its judgment to ORKA. In addition to these threshold problems, Plaintiffs' attempts to impose RICO liability on Metchik, based on petitioning activity done in Metchik's capacity as a lawyer, is barred by the *Noerr-Pennington* doctrine and fails to satisfy the operation and management test. Further, Plaintiffs' Opposition fails to address Metchik's challenges to the Complaint's deficient association-in-fact enterprise allegations and deficient obstruction of justice allegations and by failing to address them, Plaintiffs have conceded the arguments. *Pilgrim v. Gen. Motors Co.*, No. CV 15-8047-JFW (EX), 2020 WL 7222098, at *7 n. 16 (C.D. Cal. Nov. 19, 2020).

Plaintiffs' inability to identify any authority or to point to any well-pleaded facts to overcome Metchik's challenges to the Complaint is evidence that the Complaint's defects cannot be cured. Because Plaintiffs lack standing and cannot state valid RICO claims against Metchik, he requests that the Court dismiss the claims against him with prejudice.

## II.    PLAINTIFFS CONCEDE THEY LACK STANDING

In their Opposition, Plaintiffs concede that EWB and ICW did not assign any RICO claims to Plaintiffs. (Dkt. No. 114. at 21 ["Plaintiffs did not receive an assignment of unadjudicated claims or freestanding RICO causes of action."].) This admission is fatal to Plaintiffs' claims. As Metchik pointed out in his moving papers, a "RICO claim can be assigned only through an express assignment." *Brown v. Bank*

LARSON
LOS ANGELES

DEFENDANT PAUL G. METCHIK'S REPLY IN SUPPORT OF MOTION TO DISMISS

*of Am., N.A.*, No. ED CV 12-02009 TJH, 2014 WL 12707378, at *1 (C.D. Cal. Feb. 24, 2014). In Opposition, Plaintiffs failed to offer any authority to the contrary. Thus, Plaintiffs' concession that no such assignment occurred is the end of the inquiry, and sufficient basis to dismiss the Complaint.

Plaintiffs attempt to side-step their apparent standing problem by attacking an argument that Metchik did not make. (Dkt. No. 114 at 22.) While Plaintiffs assert that they "could not have received an assignment of unasserted pre-judgment RICO claims belonging to EWB or ICW," (Dkt. No. 114 at 22), that legal impossibility was not the subject of Metchik's Motion. Rather, in his Motion, Metchik argued that the alleged post-judgment (and pre-assignment) injury—the inability to collect on the judgments—is the same injury for which Plaintiffs now seek recovery. (Dkt. No. 93 at 14–16.) Indeed, the Complaint alleges that EWB and ICW—the original judgment creditors—were unable to collect on their judgments. (*See, e.g.*, Dkt. No. 1 ("Compl.") ¶¶ 5–9, 19, 20, 85–87, 96, 97, 108.) And Plaintiffs' admission that EWB and ICW did not assign any RICO claims demonstrates that Plaintiffs lack standing.

Plaintiffs' assertion that they "have experienced their own direct injuries" misses the mark. (Dkt. No. 114 at 23.) This erroneous assertion does not cure Plaintiff's lack of standing. The scope of the assignment determines the rights that Plaintiffs acquired. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 897–98 (C.D. Cal. 2012). In this instance, the absence of an express assignment of EWB's or ICW's potential RICO claims arising from the inability to collect on their respective judgments means that Plaintiffs have no right to assert any RICO claims here. (Dkt. No. 93 at 13–14.)

## III.   **THE COMPLAINT'S PLEADING DEFECTS CANNOT BE CURED**

### A.   **The RICO Claims Are Time-Barred**

It is clear from the face of the Complaint that any RICO claims attached to the judgments at issue are stale. In their Opposition, Plaintiffs attempt to distract the court from a straightforward application of the discovery rule. (Dkt. No. 114 at 23.) The

LARSON
LOS ANGELES

DEFENDANT PAUL G. METCHIK'S REPLY IN SUPPORT OF MOTION TO DISMISS

Complaint fails to allege a "new and independent injury" to support Plaintiffs' efforts to assert stale claims. Thus, because the alleged injury to the judgments occurred outside the applicable statute of limitations, Plaintiffs' RICO claims are time-barred.

The Ninth Circuit follows the injury discovery rule, which has two parts: (1) the statute of limitations for a civil RICO claim "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action" and (2) "a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir. 1996). Plaintiffs cannot rely on the acquisition of the judgments to revive stale claims. Courts in this jurisdiction have rejected similar attempts to assert stale RICO claims based on actions that are part of the same alleged scheme.

The plaintiff-appellant in *Grimmett* also unsuccessfully argued that a defendant had engaged in "new" conduct after the statute of limitations that injured her, in relevant part "(1) mail fraud by submitting false documents to the Bankruptcy Court to conceal the fraud; (2) obstruction of justice by concealing documents and falsely testifying in depositions." *Grimmett,* 75 F.3d at 514. The court found that these actions were not "new and independent" because "all of them [we]re part of the same corporate reorganization/bankruptcy scheme, and the injuries Siragusa claims are identical to those alleged prior to that time—the loss of her interest in Vincent's practice." *Id.* at 514. Here too, like in *Grimmett,* all alleged conduct post-assignment of the Textron judgments naturally flows from EWB's and ICW's inability to collect on their respective judgments. Throughout the Complaint, Plaintiffs allege that EWB and ICW—the original judgment creditors—were unable to collect on their judgments based on conduct that occurred outside the limitations period. (*See, e.g.*, Compl. ¶¶ 9, 11, 12, 13, 114, 122–126, 131 [alleging the conduct "stripped junior liens – including the EWB Judgment lien and the ICW Judgment lien from the properties. . . ."].) Therefore, because the alleged injury to the EWB and ICW judgments naturally flows

from the various actions enforcing the Textron judgments, Plaintiffs have not alleged new and independent injuries.

Plaintiffs' attempt to avoid the statute of limitations fails for the same reason that they lack standing—their alleged injury is not independent from EWB's and ICW's inability to collect on their judgments. Thus, Plaintiffs claims are time-barred, as they have alleged "a single, static injury that occurred years ago:" the alleged injury to the original judgments.

**B.      Metchik's Petitioning Activity is Immunized by _Noerr-Pennington_**

The Opposition fails to identify any well-plead facts or applicable legal authority to overcome the _Noerr-Pennington_ doctrine. (Dkt. No. 114 at 39–42.) Plaintiffs' arguments seek to turn the _Noerr-Pennington_ doctrine on its head, suggesting that a Plaintiff can bypass its protections merely by asserting legal conclusions claiming the challenged petitioning activity is meritless. (_Id_. at 41–42.) However, the law in this jurisdiction is quite clear that a Plaintiff cannot "simply recast disputed issues from the underlying litigation" as "misrepresentations" to avoid _Noerr-Pennington_. _Kottle v. Nw. Kidney Centers_, 146 F.3d 1056, 1063 (9th Cir. 1998). There is no question that the instant action, if permitted to proceed, would burden protected activity. And the Complaint's conclusory allegations and labels are insufficient to invoke any exception to the _Noerr-Pennington_ doctrine.

"[P]laintiff's complaint [must] contain specific allegations demonstrating that the _Noerr–Pennington_ protections do not apply." _Boone v. Redevelopment Agency of City of San Jose_, 841 F.2d 886, 894 (9th Cir. 1988). However, Plaintiffs' Complaint failed to plead plausible facts to make such a showing. Indeed, Plaintiffs' _Noerr–Pennington_ Opposition arguments fail to cite to relevant portions of the Complaint to support their meritless argument. (Dkt. No. 114 at 39–42.) Plaintiffs now claim the Complaint pleads the "necessary objective baselessness," (Dkt. No. 114 at 40–41) and claim that _Noerr_ does not apply to interference "with the business relationships of a competitor." (Dkt. No. 114 at 40.) Plaintiffs did not allege in their Complaint that _any_

LARSON
LOS ANGELES

DEFENDANT PAUL G. METCHIK'S REPLY IN SUPPORT OF MOTION TO DISMISS

litigation conduct by Metchik was "objectively baseless" to trigger the exceptions. (Dkt. No. 93 at 19.) In the same breath, Plaintiffs attempt to invoke the "sham process" exception as well as invoke the "legitimacy" of the court's proceedings. (Dkt. No. 114 at 40–41.) Plaintiffs' efforts fail, however, as the Complaint fails to plead facts to invoke any exception to the *Noerr-Pennington* doctrine.

With respect to the sham litigation exception, the Ninth Circuit applies its own test under *Kottle* as well as the Supreme Court's sham litigation test under *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc*., 508 U.S. 49, 60–61 (1993) ("*PRE II* "); *Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 938 (9th Cir. 1998) (citing *Kottle, 146 F.3d at 1060* & *PRE II*). Under *Kottle*, the sham exception does not protect a lawsuit which "is objectively baseless" and where "the defendant's motive in bringing it was unlawful." *Sosa, 437 F.3d at 938*. The court does not look at the defendant's motive if the suit is not objectively baseless. *See Kottle, 146 F.3d at 1062–63*. A lawsuit is objectively baseless where "no reasonable litigant could realistically expect success on the merits." *PRE II, 508 U.S. 49, 60 (1993)*. However, a suit is not objectively baseless where it "is entirely successful in obtaining the governmental action sought." *Kottle, 146 F.3d at 1063* (citations omitted).

Here, Plaintiffs' sham arguments fail for the same reason as in *Kottle, 146 F.3d at 1063*, as Plaintiffs have not demonstrated any objective sham. Plaintiffs do not (and cannot) allege anywhere in the Complaint that *any* court has found the underlying assignment of the Textron judgment invalid. Plaintiffs do not allege that the assignments that Textron made to ORKA contained false representations with respect to the amounts due. Plaintiffs claim the balance of the Textron judgments "were grossly inflated," (Dkt. No. 114 at 41) because Plaintiffs conclude that the judgments should have been deemed satisfied. However, the initial assignment ***from Textron*** to ORKA is attached to the Complaint and contradicts Plaintiffs' conclusion that the judgments were satisfied. (Dkt. No. 1-6, Ex. 6 at 6 & Dkt. No. 1-8, Ex. 8 at 6 to

Compl.) Textron would have nothing to assign if the judgments were satisfied. Instead, Textron represented the amounts still due on the judgment when it made the assignment to ORKA, and asserted that the assignment was made for valuable consideration. (Dkt. No. 1-6, Ex. 6 at 6 & Dkt. No. 1-8, Ex. 8 at 6 to Compl.) Accordingly, Plaintiffs fail to allege "objectively baseless" litigation conduct to overcome *Noerr-Pennington*.

With respect to the foreclosures, Plaintiffs *label* the foreclosures as "fake" or a "sham." Plaintiffs' characterizations of the foreclosures are of no consequence as the Complaint failed to allege that ORKA (or AKRO) as the assignee of the Textron Judgments did not have the legal right to foreclose on the Kings' properties. In fact, as a secured creditor, California law permitted ORKA to credit bid at a nonjudicial foreclosure sale without tendering cash. (Cal. Civ. Code. § 2924h.)

Finally, Plaintiffs contend that Metchik "concealed critical insider relationships that would have altered how courts evaluated Defendants' purported enforcement posture." (Dkt. No. 114 at 41.) The Opposition and the Complaint fail to reference any relevant disclosure obligation Metchik did not meet. Likewise, the Complaint fails to allege that Metchik affirmatively prevented the court from becoming aware of any associations Metchik may have had with the King Family, which were a matter of public record. (*See* Compl. ¶¶ 62, 142; *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1166 (C.D. Cal. 2022) ["An allegation of active concealment must plead more than an omission; rather, a plaintiff must assert affirmative acts of concealment; *e.g.*, that the defendant 'sought to suppress information in the public domain or obscure the consumers' ability' to discover it."].) Plaintiffs have no basis to assert that Metchik's conduct concerning the assignments, judgment renewals, foreclosures, and other judgment enforcement for ORKA and AKRO before the courts was "objectively baseless." Accordingly, the sham exception does not apply.

As to the inapplicable "sham process" exception alluded to by Plaintiffs, that exception applies where individuals use a governmental or judicial "process—as

opposed to the outcome of that process—as a . . . weapon. A classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *City of Columbia v. Omni Outdoor Advert., Inc.,* 499 U.S. 365, 380 (1991). In addition, a "'sham' situation involves a defendant whose activities are 'not genuinely aimed at procuring favorable government action' at all." *Id.* at 380 (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 500, n. 4 (1988)). First, there are no allegations that Metchik, on behalf of ORKA or AKRO, made any frivolous filings in court. Moreover, Plaintiffs alleged ORKA successfully foreclosed on certain properties, (Compl. ¶¶ 122–24), precluding the argument that this is a "sham situation." Nevertheless, Plaintiffs attempt to argue that Metchik "weaponize[d] the *process* itself to block Plaintiffs' lawful collection efforts" to interfere with Plaintiffs. (Dkt. No. 114 at 40.) However, reference to this "interference" language is step two of the objective sham analysis. It is not a factor that the court can analyze before a plaintiff affirmatively demonstrates that the litigation conduct is objectively a sham, which Plaintiffs have not done.

The last sham exception that Plaintiffs attempt to invoke concerns "intentional misrepresentations to the court" such that *those* misrepresentations "deprive the litigation of its legitimacy." *Kottle,* 146 F.3d at 1060, 1063. Plaintiffs' claim that Defendants' scheme "depend[ed] on knowingly false filings and sham enforcement proceedings that 'deprived the relevant judicial proceedings of their legitimacy.'" (Dkt. No. 114 at 40.) While Plaintiffs claim that Defendants "corrupted the petitioning process by submitting false information," Plaintiffs did not expressly and specifically identify any intentional misrepresentations made by Metchik to the courts as required. (Dkt. No. 114 at 39–42.) Moreover, Plaintiffs did not expressly allege anywhere in their Complaint that *any* judicial proceedings were deprived of their legitimacy, much less alleged that judicial proceedings were "tainted" by Metchik's representations to the courts with the appropriate level of specificity that would warrant the application

of this exception.

Instead, Plaintiffs alleged in a conclusory manner that Metchik filed "numerous documents containing material falsehoods, including but not limited to: affidavits and applications for writs of execution that grossly inflated the balances of the Textron Judgments." (Compl. ¶ 221(f).) The alleged use of false affidavits "is a charge that can easily be leveled, and it is thus insufficient by itself to overcome *Noerr-Pennington* immunity. [Citations omitted.] A party should not as a matter of course have the accuracy of its testimony in a prior judicial proceeding subject to subsequent and collateral attack." *Omni Resource Development Corp. v. Conoco, Inc.*, 739 F.2d 1412, 1414 (9th Cir. 1984). While Plaintiffs generally identify the filings and papers that they take issue with such as "the December 19, 2019 renewal of the Textron Judgments for a combined $6,307,796.76; motions and proposed charging orders; and the state-court ORAP examination application," Plaintiffs do not identify *any* portion of these filings that contain misrepresentations. (Compl. ¶ 221(f).) Here, Plaintiffs identify enforcement conduct that flows from the initial assignment, and since Plaintiffs have no objective basis to assert that the initial assignment was invalid, their arguments regarding these filings fail. Moreover, Plaintiffs do not allege that Metchik's actions deprived the post-judgment enforcement litigation of its legitimacy. Because none of the sham exceptions apply, and because Plaintiffs seek to impose liability for engaging in protected petitioning activity, Metchik requests the Court grant his motion to dismiss without leave to amend.

**C.    Plaintiffs Fail to State RICO Claims Against Metchik**

Plaintiffs' Opposition fails to demonstrate that Plaintiffs have pleaded adequate RICO claims against Metchik or that they can cure the Complaint's defects.

1.    The RICO Claims Fail to Meet Rule (9)(b)

Plaintiffs mischaracterize Metchik's Rule 9(b) arguments, as Metchik never argued that "court filings and legal process cannot, as a matter of law, constitute mail or wire fraud." (Dkt. No. 114 at 29–30.) Instead, Metchik challenged the Complaint

LARSON
LOS ANGELES

DEFENDANT PAUL G. METCHIK'S REPLY IN SUPPORT OF MOTION TO DISMISS

on the grounds that it failed to satisfy Rule 9(b). (Dkt. No. 93 at 23–29.) In addition to alleging the time, place, and identities of the parties of certain mailings when alleging mail fraud under RICO, plaintiffs must also allege the specific contents of the mailings or notices that constituted mail fraud or attach the documents to the Complaint to satisfy Rule 9(b). *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). Plaintiffs' contention that they are not required "to plead every docket number or attachment at the motion-to-dismiss stage" is misleading and beside the point. (Dkt. No. 114 at 29.)

Metchik argued that Plaintiffs failed to meet Rule 9(b) because Plaintiffs failed to attach the documents containing the purported misrepresentations and further failed to explain why each statement was false. (Dkt. No. 93 at 24–27.) Plaintiffs claim that: "Metchik personally prepared, signed, filed, and caused to be transmitted affidavits, judgment renewals, writ applications, ORAP declarations, and U.S. Marshal sale papers that affirmatively misstated judgment balances and omitted material satisfaction-level facts, all under penalty of perjury." (Dkt. No. 114 at 27–28, citing Compl. ¶¶ 11–12, 123, 129, 136, 138.) Plaintiffs' piecemeal allegations against Metchik fail to meet Rule 9 to state a predicate act of mail or wire fraud.

Plaintiffs were required to set forth verbatim the specific contents of each of the challenged court filings constituting the purported misrepresentations, or attach each of them to the Complaint, specifically identify the misrepresentation constituting mail or wire fraud, along with the correct information. *See Edwards*, 356 F.3d at 1066. Metchik identified several paragraphs in Plaintiffs' Complaint that did not meet this requirement. (Dkt. No. 93 at 25–26.) As to the cited paragraphs in the Opposition, paragraphs 11 and 12 of the Complaint fail to meet the heightened pleading standard as they do not allege when, where, and how Metchik misrepresented the $5,137,620.42 judgment nor what is false or misleading about the amount left on the judgment nor why the judgment *renewed* at $6,307,796.76 is grossly inflated. With respect to paragraph 123, Plaintiffs claim that Metchik "falsely identified the *Vaquero*

Judgment balance as more than $5 million," but do not explain or allege what the actual judgment balance should have been or why this amount is false; paragraph 136 suffers from the same defects, as Plaintiffs generally allege Metchik "inflat[ed] judgment balances . . . and omit[ed] material facts." Paragraph 129 contains no express allegations regarding Metchik and fails to identify the misrepresentation as well as the person who allegedly made it. Paragraph 138 alleges that Metchik, on behalf of AKRO, alleged in a new state-court enforcement action that the outstanding balance on the *Spanish Springs II* judgment was $1,143,181.43, but crucially, Plaintiffs failed to explain what amounts were received and when those amounts were received such that the *Spanish Springs II* judgment was satisfied. Finally, Plaintiffs' omission arguments and allegations in paragraphs 123 and 126 are insufficient to constitute concealment as a matter of law, *Cho*, 636 F. Supp. 3d at 1166, and Plaintiffs do not allege facts (rather than conclusions) that Metchik actively concealed material information from the courts.

Plaintiffs' Opposition does not address Metchik's obstruction of justice arguments showing that the Complaint is missing this crucial element of the "[s]pecific intent to impede the administration of justice." *United States v. Ryan*, 455 F.2d 728, 734, 736 (9th Cir. 1971). Instead, Plaintiffs argue they adequately pled an obstruction of justice claim, relying on paragraphs 138–48, 221(f) and 225 of the Complaint, (Dkt. No. 114 at 31), but these allegations do not identify any specific intent to impede or obstruct the administration of justice. Moreover, Plaintiffs concede that their JDE "sham" allegations (Compl. ¶¶ 138–141) are speculative by failing to address Metchik's arguments. (Dkt. No. 93 at 28–29; *Pilgrim*, 2020 WL 7222098, at *7 n. 16*.) Plaintiffs further fail to point to any law, rule, or other authority requiring Metchik to disclose his former associations with the Kings (Compl. ¶¶ 142–48.) And as explained in the Motion, several allegations throughout the Complaint and in paragraph 142 are implausible. The remaining allegations concern Metchik's legal work for AKRO and AKRO's filings in the *Spanish Springs II* action. (*Id.* ¶¶ 140–

48). While Plaintiffs charge Metchik with "repeated perjury," Plaintiffs fail to point to authority requiring that Metchik disclose the information they claim he intentionally concealed. (*Id.* ¶¶ 146–47.) The conclusory allegations in paragraphs 221(f) and 225 do not transform Metchik's conduct on behalf for AKRO into "obstruction of justice." (*See id.* ¶¶ 138–48, 221(f), 225.)

### 2. Plaintiffs Fail to Plausibly Allege Remaining Elements of a Civil RICO Claim to State a Claim Against Metchik

Plaintiffs fail to plausibly allege facts that Metchik was part of an association-in-fact enterprise and further fail to plausibly allege that Metchik operated and/or managed a RICO enterprise. Plaintiffs' attempts to treat Metchik's legal role with RKO of more than 40 years ago and alleged limited business association with John and John G. as support for the claim that he was part of an association-in-fact enterprise are unavailing. Plaintiffs' Opposition does not address Metchik's implausibility arguments regarding the alleged association-in-fact enterprise. (Dkt. No. 114 at 32–33.) As such, Plaintiffs' failure to address this argument is a concession that the allegations are implausible and insufficient to allege that Metchik was part of an association-in-fact enterprise. (Dkt. No. 93 at 33–35; Dkt. No. 114 at 34; *Pilgrim,* 2020 WL 7222098, at *7 n. 16*.)

Plaintiffs' conclusion that "Metchik was a central operational actor who knowingly directed and executed the Enterprise's" conduct (Dkt. No. 114 at 36; Compl. ¶¶ 41, 52) similarly lacks plausible factual allegations to maintain a RICO claim. As explained in the motion (Dkt. No. 93 at 30–33), outside of legal conclusions and concededly implausible allegations, Plaintiffs alleged no facts demonstrating that Metchik operated and/or managed a RICO enterprise. Metchik merely performed routine legal services for judgment creditors ORKA and AKRO, which is insufficient for RICO liability. (*Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008); *see, e.g.*, Compl. ¶ 123 (alleging that Metchik made a filing on behalf of ORKA), ¶ 140 (same as to AKRO).) Indeed, Metchik played no part in the litigation regarding the Textron

judgments prior to ORKA's acquisition and did not represent John E. or Carole in connection with the collection efforts by ICW or EWB. (*See* Dkt. No. 93 at 25.) There are also no allegations in the Complaint that Metchik was a "gatekeeper," or that Metchik "controlled" what courts were told. Indeed, Plaintiffs' own Complaint forecloses this argument as Plaintiffs allege that others "should have instructed ORKA and AKRO's counsel, Metchik, to file credits or satisfactions for the Textron Judgments." (Compl. ¶ 113.) Plaintiffs' argument regarding "structur[ed] insider transactions," goes to legal services and lacks merit as Plaintiffs fail to establish that judgment creditor ORKA did not have the right to enforce the relevant judgments and foreclose on judgment debtor property via credit bid. (Compl. ¶ 11 [alleging ORKA's acquisition of various debtor properties and characterizing them as "insider transactions"]; Cal. Civ. Code. § 2924h.) Here, Metchik provided routine legal services to judgment creditors ORKA and AKRO and Plaintiffs fail to allege plausible facts that Metchik played any part in participating or directing the management or control of the alleged enterprise. Accordingly, Plaintiffs fail to state a RICO claim against Metchik.

### 3. Plaintiffs' Derivative Civil RICO Conspiracy Claims Fails

Because Plaintiffs fail to state a substantive Civil RICO claim against Metchik, their derivative Civil RICO conspiracy claim fails. Plaintiffs' contention that the "that Defendants knowingly agreed to participate in and conceal a coordinated scheme" is not well taken, especially as Metchik has argued, and Plaintiffs have not substantively opposed the argument that the allegations with respect to Metchik's knowledge are implausible. Accordingly, Metchik requests that the Court dismiss this claim with prejudice.

## IV. **CONCLUSION**

For the reasons stated above, Metchik requests that the Court dismiss the claims against Metchik without leave to amend.

LARSON
LOS ANGELES

17

Dated:  May 18, 2026                    LARSON LLP


                                        By:  ___/s/ A. Alexander Lowder___
                                             Stephen G. Larson
                                             A. Alexander Lowder
                                             Elizabeth Christianson
                                        Attorneys for Defendant PAUL G. METCHIK

18

DEFENDANT PAUL G. METCHIK'S REPLY IN SUPPORT OF MOTION TO DISMISS

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant PAUL G. METCHIK certifies that this brief contains 12 pages, which complies with this Court's page limit, as set forth by court order dated December 29, 2025.

DATED: May 18, 2026

> */s/ A. Alexander Lowder*
> Stephen G. Larson
> A. Alexander Lowder
> Elizabeth Christianson
>
> Attorneys for Defendant PAUL G. METCHIK

DEFENDANT PAUL G. METCHIK'S REPLY IN SUPPORT OF MOTION TO DISMISS