Nicholas O. Kennedy (State Bar No. 280504)
nicholas.kennedy@bakermckenzie.com
Annasofia A. Roig (Admitted *Pro Hac Vice*)
annasofia.roig@bakermckenzie.com
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, TX 75201
Telephone: 214 978 3000
Facsimile: 214 978 3099

Armen Manasserian (State Bar No. 288199)
armen@ml-apc.com
**MANASSERIAN LAW, APC**
35 Hugus Alley, Suite 210
Pasadena, CA 91103
Telephone: 626 469 0500
Facsimile: 626 469 0510

Attorneys for Plaintiffs,
Coronitas Holdings, LLC, and
Wolverine Endeavors VIII, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

CORONITAS HOLDINGS, LLC, a Wyoming limited liability company; and WOLVERINE ENDEAVORS VIII, LLC, a California limited liability company,

Plaintiffs,

v.

1023 MONTEREY INVESTORS LLC, et al.,

Defendants.

Case No. 2:25-cv-11946-JFW-SK

Complaint Filed: December 17, 2025

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO EXTEND TIME TO SUBSTITUTE A SUCCESSOR TO DEFENDANT CAROLE KING [FRCP 25]**

Date: November 9, 2026
Time: 1:30 p.m.
Before The Hon. John F. Walter
350 West First Street- Courtroom 7A
Los Angeles, CA 90012
Trial Date: July 27, 2027

# TABLE OF CONTENTS

**Page No.**


INTRODUCTION .......... 4

ARGUMENT .......... 5

I. The Undisputed Record Establishes Good Cause Under Rule 6(b)(1)(A). .......... 5

II. Requiring Substitution of an Interim Special Administrator Now Would Invite Duplicative Motion Practice. .......... 7

III. The Responding Defendants Identify No Prejudice, and Their Proposed Thirty-Day Deadline Would Expire Before the Probate Court Hears the Pending Petitions. .......... 9

IV. The Motion Accurately Described the Probate Record. .......... 11

V. The Bankruptcy Proceedings Have No Bearing on the Motion. .......... 13

VI. The Request for Judicial Notice Does Not Alter the Analysis. .......... 13

VII. Plaintiffs Do Not Oppose the Responding Defendants' Remaining Requests, Provided Any Reservation Is Mutual. .......... 14

CONCLUSION .......... 15

CERTIFICATE OF COMPLIANCE .......... 16

CERTIFICATE OF COMPLIANCE OF COMPLIANCE REGARDING GENERATIVE ARTIFICAL INTELLIGENCE .......... 17

# TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Ahanchian v. Xenon Pictures, Inc.*,
624 F.3d 1253 (9th Cir. 2010) .......... 5, 10

*Barlow v. Ground*,
39 F.3d 231 (9th Cir. 1994) .......... 14

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 13, 14

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......... 13

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) .......... 13

**Statutes**

Cal. Prob. Code § 8546(a) .......... 8

**Other Authorities**

Fed. R. Civ. P.

Rule 1 .......... 9

Rule 4 .......... 14

Rule 6(b) .......... 6

Rule 6(b)(1) .......... 5

Rule 6(b)(1)(A) .......... 5, 7

Rule 25 .......... 5, 6

Rule 25(a)(1) .......... 14, 15

# INTRODUCTION

The Response filed by Defendants John E. King, individually and as trustee, Black Chaps, LLC, Boutique Hotel Collection, Inc., Michael Nelson, and Lana Lucas (the "Responding Defendants") tries to turn a narrow scheduling motion into a referendum on the probate proceedings for Carole D. King, an unrelated bankruptcy proceeding and order, and the purported motives of a nonparty probate petitioner. None of that bears on the only question presented by Plaintiffs' motion: whether there is good cause for a limited extension of the time to move for substitution of Ms. King as a defendant while the probate court decides who will permanently represent Ms. King's estate. There is.

Plaintiffs' motion is straightforward. It asks for a modest, time-limited extension of the period to move to substitute a successor for deceased Defendant Carole D. King, so that substitution can be accomplished once—after the Superior Court of California, County of San Luis Obispo, decides who will serve as the general personal representative of Ms. King's estate. Although the Response asserts that, in the Responding Defendants' opinion, Plaintiffs "do not need more time," (ECF 166, Resp., at 4), it does not ask the Court to deny the Motion. It asks instead that the Court "decline to adopt" certain characterizations of the probate record, shorten any granted extension to thirty days, and preserve the parties' positions on issues the Motion itself expressly reserved. (*Id.* at 8–9.)

The probate record on which the Responding Defendants rely confirms that Plaintiffs' requested extension is warranted. Mr. King serves as special administrator under an interim appointment he sought "while competing petitions for probate are pending" and "to serve until an executor is appointed and letters issue upon qualification." (ECF 164-2, Roig Decl., ¶ 16 & Ex. D at 2.) Mr. King's own petition to probate Ms. King's will and to be appointed executor remains pending, as does the competing petition, and—according to the Responding Defendants' own exhibits—the

probate court has continued both to January 5, 2027. (ECF 166, Resp., at 8; ECF 166-4, RJN, Ex. C.) No general personal representative can be appointed before then. A thirty-day deadline running from the hearing on this Motion, which the Responding Defendants propose, would expire before the probate court even takes up the pending petitions, and its only practical effect would be to require Plaintiffs to substitute an interim fiduciary now and, potentially, to return to this Court with a second substitution motion later. The Responding Defendants do not dispute that risk; they confirm it. They acknowledge that Mr. King's appointment is "interim" and that, "if a different representative were later appointed," Plaintiffs would have to move to substitute again. (ECF 166, Resp., at 6.)

Plaintiffs' proposal, on the other hand, avoids that inefficiency while keeping the matter on a short leash. It contains a fixed outer date of January 26, 2027, and modifies no other deadline in the case. (ECF 164-2, Roig Decl., ¶¶ 6, 8.) The Responding Defendants identify no prejudice from that schedule, and none exists. Nor did Plaintiffs hide anything: the Motion disclosed—and attached—Ms. King's will, Mr. King's petition, and the order appointing him special administrator. (ECF 164-2, Roig Decl., Exs. C–E.) Good cause is readily established, and the Motion should be granted.

## ARGUMENT

### I. THE UNDISPUTED RECORD ESTABLISHES GOOD CAUSE UNDER RULE 6(B)(1)(A).

Even assuming the Notice triggered the 90-day period, Plaintiffs filed the Motion within it. The Motion is therefore governed by Rule 6(b)(1)(A), which requires only "good cause." Fed. R. Civ. P. 6(b)(1)(A). The Ninth Circuit has instructed that Rule 6(b)(1) is to be "liberally construed to effectuate the general purpose of seeing that cases are tried on the merits," and that requests for extensions made before the deadline expires should "normally . . . be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258–59 (9th Cir. 2010) (citations omitted). The drafters of Rule

25 contemplated precisely this use of Rule 6(b), anticipating that the 90-day substitution period could be enlarged where circumstances warrant. *See* Fed. R. Civ. P. 25 advisory committee's note to 1963 amendment. The Responding Defendants do not cite a single authority suggesting a different standard, and they do not contend that Plaintiffs have acted in bad faith in seeking relief here.

Nor do the Responding Defendants dispute any of the facts on which the Motion rests. Ms. King died on June 8, 2026. (ECF 164-2, Roig Decl., ¶ 15 & Ex. C.) When the Notice and Suggestion of Death was filed on June 30, 2026, no probate proceeding had been opened, and the Notice identified no successor or representative. (*Id.* ¶¶ 11, 14.) Mr. O'Neill petitioned for letters of administration on August 5, 2026, (ECF 166-4, RJN, Ex. A), and Mr. King filed his petition on August 11, 2026, (ECF 164-2, Roig Decl., ¶ 15 & Ex. C). Mr. King then obtained an ex parte appointment as special administrator, which he requested precisely because "competing petitions for probate are pending," and which he asked to last only "until an executor is appointed and letters issue upon qualification." (*Id.* ¶¶ 16–17 & Exs. D at 2, E.) Indeed, Mr. King told the probate court that the competing petition "stands to delay appointment of a general personal representative." (*Id.* Ex. D at 5.) And, as the Responding Defendants now confirm, both petitions have been continued to January 5, 2027. (ECF 166, Resp., at 8; ECF 166-4, RJN, Ex. C.)

Those are the circumstances the Motion described, and they are the circumstances that supply good cause. The question of who will permanently represent Ms. King's estate is presently before the probate court, and that court has scheduled its next hearing on the issue for January 2027. A brief extension that allows substitution to follow that determination is a sensible exercise of the Court's discretion over its own docket.

The Responding Defendants' contention that Plaintiffs "chose" not to move sooner, (ECF 166, Resp., at 6), does not change the analysis. Plaintiffs did not hide that choice; they disclosed and explained it in the Motion, (ECF 164-2, Roig Decl., ¶ 19)—

as evidenced by the very fact that the Responding Defendants quote it. And it was a reasonable one. Rather than move to substitute an interim fiduciary whose role was expressly tied to the outcome of pending petitions, Plaintiffs asked the Court—before any arguable deadline expired—to allow substitution to follow the probate court's decision. A timely request for an orderly schedule is not a lack of diligence. Moving sooner also would not have avoided the problem: on the Responding Defendants' timeline, Plaintiffs still would have been substituting a fiduciary serving only in a temporary capacity, and the same inefficiency concerns would apply. Nor does the timing of Plaintiffs' meet-and-confer email bear on good cause. (*See* ECF 166, Resp., at 7.) Plaintiffs conferred before filing, did not anticipate any objection given the lack of representation, accurately reported the Responding Defendants' position and its stated basis, (ECF 164-2, Roig Decl., ¶ 20), and filed within the very period the Responding Defendants contend applies. As to timing, Rule 6(b)(1)(A) requires nothing more: the request need only be made "before the original time . . . expires." Fed. R. Civ. P. 6(b)(1)(A).

## II. REQUIRING SUBSTITUTION OF AN INTERIM SPECIAL ADMINISTRATOR NOW WOULD INVITE DUPLICATIVE MOTION PRACTICE.

The Responding Defendants' principal argument is that Plaintiffs could have moved to substitute Mr. King in his capacity as special administrator. (ECF 166, Resp., at 6.) Plaintiffs have never suggested otherwise. The Motion does not rest on the proposition that substitution is impossible; it rests on the proposition that substituting an interim fiduciary now is likely to require a second substitution motion once a general personal representative is appointed. (ECF 164-2, Roig Decl., ¶ 19.) The Responding Defendants effectively concede the point. They acknowledge that Mr. King's appointment is "interim," (ECF 166, Resp., at 6), and they acknowledge that "if a different representative were later appointed," Plaintiffs would then need to move again

to substitute that successor. (*Id.*) That is precisely the serial motion practice the requested extension is designed to avoid.

Nor do the Responding Defendants suggest that substituting Mr. King now would settle anything. Before the Motion was filed, their counsel expressly declined to concede "whether substitution is proper" or "who any proper substitute should be," and reserved the position that the claims against Ms. King abated upon her death. (ECF 166-1, Krieger Decl., Ex. 2.) The Response reserves the same positions, (ECF 166, Resp., at 3, 9), and states that the Responding Defendants do not appear on the estate's behalf, (*id.* at 3). A substitution motion directed to the special administrator now would thus invite a contested proceeding over an interim appointment—followed, potentially, by another once letters issue.

The Responding Defendants emphasize that the probate court's order states no expiration date and identifies Mr. King as a "personal representative." (*Id.* at 6.) Plaintiffs do not dispute that a special administrator may be substituted; the question is whether it makes sense to do so now. And the absence of a calendar date does not make an interim appointment permanent. Under California law, the powers of a special administrator cease upon the issuance of letters to a general personal representative. *See* Cal. Prob. Code § 8546(a). Mr. King's own application confirms that is how he understood his role: he asked to serve "until an executor is appointed and letters issue upon qualification." (ECF 164-2, Roig Decl., Ex. D at 2.) The event that will end his special administration—the issuance of letters—is the very event the probate court has set for hearing in January.

It is inconsequential for purposes of the Motion that Mr. King is the executor nominated in Ms. King's will. (*See* ECF 166, Resp., at 3–5.) Whether he will be appointed executor is a question for the probate court, which has continued his petition along with the competing one. (*Id.* at 8.) Even if letters ultimately issue to Mr. King, he would then act in a different capacity, under different letters, than the one in which the

Responding Defendants say he should be substituted today. The point of the Motion is to make that determination once, on a settled probate record, rather than piecemeal. The Federal Rules are to be administered "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Requiring two substitution motions where one will do serves none of those ends.

Finally, Mr. King's status as surviving trustee of the John and Carole King Family Trust, Dated April 20, 2006, does not change the analysis either. (ECF 166, Resp., at 5.) Plaintiffs sued Ms. King both individually and as co-trustee. Whatever Mr. King's role with respect to the trust, the claims against Ms. King in her individual capacity must be pursued against her estate, through a properly substituted successor or representative.

The trust and the estate are not the same party. The Responding Defendants themselves acknowledge as much: they state that the estate "has not been substituted into this action and is not a party to it, and the Responding Defendants do not appear on its behalf." (*Id.* at 3.) Mr. King's participation as trustee does not make the estate a party or eliminate the need for an orderly substitution.

## III. THE RESPONDING DEFENDANTS IDENTIFY NO PREJUDICE, AND THEIR PROPOSED THIRTY-DAY DEADLINE WOULD EXPIRE BEFORE THE PROBATE COURT HEARS THE PENDING PETITIONS.

The Response does not identify a single form of prejudice. Indeed, the word "prejudice" appears in the Response only once—in the Responding Defendants' request that any order be "without prejudice" to their own positions. (ECF 166, Resp., at 9.) The Responding Defendants do not contend that the requested extension will delay discovery, impair any defense, cause the loss of evidence, or affect any date in the Court's Scheduling and Case Management Order. It will not. Discovery is proceeding against the remaining parties, the discovery cut-off is March 1, 2027, and trial is set for July 27, 2027. (ECF 164-2, Roig Decl., ¶¶ 6–7.) Plaintiffs do not seek to modify any of

those dates. (*Id.* ¶ 6.) Under *Ahanchian*, the absence of prejudice weighs heavily in favor of granting a timely request for additional time. 624 F.3d at 1259.

The Responding Defendants' alternative request—that any extension be limited to thirty days from the Court's order and not "keyed to the issuance of letters," (ECF 166, Resp., at 8)—would defeat the purpose of the extension. Thirty days from the November 9, 2026 hearing would fall in early December 2026, weeks before the probate court's January 5, 2027 hearing on both petitions. Such a deadline would not allow substitution to follow the probate court's determination; it would simply move up the date by which Plaintiffs must substitute the interim administrator. Tellingly, the Responding Defendants' own fallback accepts that some extension is appropriate; the only dispute is whether it should end before the probate court acts. A deadline designed to expire before the very event that justifies it is no answer to good cause.

Plaintiffs' proposal, by contrast, is not open-ended. Plaintiffs asked the Court to extend the deadline through the *earlier* of (i) thirty days after letters issue to a general personal representative or (ii) January 26, 2027. (ECF 164-2, Roig Decl., ¶ 8.) The proposal therefore already contains a fixed outer date—three weeks after the scheduled probate hearing and well before the discovery cut-off, the March 29, 2027 motion hearing deadline, and current trial period. (*Id.* ¶ 6.) And because the outer date is fixed, nothing that happens—or fails to happen—in the probate court, including on Mr. O'Neill's petition, can extend Plaintiffs' deadline past January 26, 2027. The suggestion that Plaintiffs keyed their deadline to an event their principal can delay, (ECF 166, Resp., at 7), ignores that backstop. The Responding Defendants offer no reason why that modest, defined schedule is unreasonable, and Plaintiffs do not object to their further request that any additional extension beyond that date require a showing of diligence.

**IV. THE MOTION ACCURATELY DESCRIBED THE PROBATE RECORD.**

The Responding Defendants devote much of their Response to the assertion that the Motion presents an "inaccurate account of the probate record." (*Id.* at 3.) The record shows otherwise. The Motion did not omit the probate record; it streamlined it, focusing on the facts that bear on timing and attaching the underlying filings so the Court could review them in full. The Motion disclosed and attached every probate filing on which the Responding Defendants rely for that assertion: Mr. King's petition and Ms. King's will, his ex parte application for special administration, and the probate court's order appointing him special administrator. (ECF 164-2, Roig Decl., ¶¶ 15–17 & Exs. C–E.) The Motion also disclosed that the Responding Defendants opposed the extension "given that a special administrator has been appointed." (*Id.* ¶ 20.)

The specific criticisms fare no better. The Response faults the Motion for stating that "no will had been offered for probate," but acknowledges that the statement described the record when the Notice was filed—which it accurately did. (ECF 166, Resp., at 4.) The Response also suggests that the Motion portrayed the estate as lacking anyone with authority "today." (*Id.* at 6 (selectively quoting the Motion).) But the sentences immediately following the passage the Response quotes disclose that the probate court appointed Mr. King special administrator on August 17, 2026, and explain why that appointment is temporary. (ECF 164, Mot., at 4.) And, as the Response concedes, the Motion acknowledged Ms. King's will in its background section. (ECF 166, Resp., at 4.)

The Responding Defendants' criticism of Plaintiffs' meet-and-confer email is likewise misplaced. That email expressly stated that "a special administrator has been appointed on a temporary basis." (ECF 166-1, Krieger Decl., Ex. 1.) Its further statement that Ms. King is "presently unrepresented in this action" was accurate. Following Ms. King's death, her counsel advised that their authority to act on her behalf had terminated and that "no personal representative or successor of the decedent or her

estate has been appointed or has appeared in this action." (ECF 164-2, Roig Decl., Ex. A.) No representative of the estate has appeared in this action since. As the Response itself acknowledges, the estate "is not a party," and the Responding Defendants "do not appear on its behalf." (ECF 166, Resp., at 3.) Whether an estate has a representative in the probate court and whether that representative has appeared in this action are different questions; the email accurately addressed both.

The Responding Defendants likewise suggest that the Motion concealed that the competing probate petitioner, Anthony O'Neill, is a principal of Plaintiff Coronitas Holdings, LLC. (ECF 166, Resp., at 4, 7.) But the only source the Responding Defendants cite for that fact is an exhibit Plaintiffs themselves filed with the Motion. (*Id.* (citing ECF 164-2, Roig Decl., Ex. D at 4).) Nothing was withheld. More fundamentally, Mr. O'Neill's petition has no bearing on the relief the Motion seeks. Mr. O'Neill is not a party to this action, and Plaintiffs do not ask this Court to evaluate his petition, his priority for appointment, or the probate court's notes concerning it. (*See id.* at 7–8.) Those matters belong to the probate court. What matters here is that the probate court has not yet decided who will serve as the estate's general personal representative—and that it has continued Mr. King's petition, not merely Mr. O'Neill's, to January 2027. (*Id.* at 8.)

The charge that Plaintiffs "manufactured an ambiguity," (ECF 166, Resp., at 4), fares no better. The uncertainty is inherent in an unresolved probate proceeding—one in which Mr. King himself sought only interim authority because "competing petitions for probate are pending," and told the probate court that the competing petition "stands to delay appointment of a general personal representative." (ECF 164-2, Roig Decl., Ex. D at 2, 5.) Plaintiffs did not create that posture; they simply asked this Court to account for it.

The same is true of the Responding Defendants' objection that Plaintiffs' proposed order refers to "letters testamentary or letters of administration." (*Id.* at 4–5.)

That phrasing makes no prediction about how the probate court will rule. It simply ensures that the extension runs from the issuance of letters to a general personal representative, whichever form those letters take. Plaintiffs do not ask this Court to resolve any question of priority under the Probate Code.

## V. THE BANKRUPTCY PROCEEDINGS HAVE NO BEARING ON THE MOTION.

The Responding Defendants also invoke a July 10, 2026 order of the bankruptcy court awarding fees and damages against Plaintiff Wolverine Endeavors VIII, LLC in connection with a 2022 involuntary petition, and they urge the Court to "see the Motion in that context." (ECF 166, Resp., at 8.) That order—which Plaintiffs themselves placed in the record, (*see* ECF 164-2, Roig Decl., Ex. D), and which Wolverine has challenged by motion in the bankruptcy court, (*see id.*)—concerns separate proceedings, a different court, and different issues. It has nothing to do with whether good cause exists for a limited extension of the time to move for substitution in this action. Plaintiffs decline the invitation to litigate those matters here, and, respectfully, the Court need not consider them to resolve this Motion.

## VI. THE REQUEST FOR JUDICIAL NOTICE DOES NOT ALTER THE ANALYSIS.

The Responding Defendants request judicial notice of three records from the probate proceeding: Mr. O'Neill's petition, the probate court's posted notes for the September 15, 2026 hearing, and the register of actions. (ECF 166-1, Krieger Decl., ¶ 5.) Plaintiffs do not object to the Court taking judicial notice of the existence of those records and of the filings and proceedings they reflect. *See* *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Judicial notice does not, however, extend to the truth of disputed factual matters asserted in those records, or to the Responding Defendants' characterizations of them, including counsel's description of the register of actions. (*See* ECF 166-1, Krieger Decl., ¶ 6); *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); *see also* *Khoja v. Orexigen Therapeutics, Inc.*,

899 F.3d 988, 999 (9th Cir. 2018). Accordingly, Plaintiffs request that the Court decline the invitation to adopt the Responding Defendants' characterizations.

In any event, the judicially noticeable facts support the Motion. The register of actions confirms that both petitions remain pending and that the probate court has continued them to January 5, 2027. (ECF 166, Resp., at 8; ECF 166-4, RJN, Ex. C.) That is the central fact on which the requested extension rests.

## VII. PLAINTIFFS DO NOT OPPOSE THE RESPONDING DEFENDANTS' REMAINING REQUESTS, PROVIDED ANY RESERVATION IS MUTUAL.

The Responding Defendants ask the Court to note that Ms. King died testate, that her will nominates Mr. King as executor, and that the probate court appointed Mr. King special administrator on August 17, 2026. (ECF 166, Resp., at 8.) Plaintiffs have no objection; each of those facts is drawn from exhibits Plaintiffs filed with the Motion. (ECF 164-2, Roig Decl., Exs. C–E.) For completeness, the Court should also note that both pending petitions have been continued to January 5, 2027, and that no general personal representative has yet been appointed. (ECF 166, Resp., at 8; ECF 166-4, RJN, Ex. C.)

The Responding Defendants also ask that any order be without prejudice to their positions that the 90-day period under Rule 25(a)(1) has run and that the claims against Ms. King abated upon her death. (ECF 166, Resp., at 9.) Plaintiffs have no objection, provided the reservation is mutual. The Motion expressly reserved those very issues, (ECF 164-2, Roig Decl., ¶ 8), and Plaintiffs maintain that the Notice did not trigger the 90-day period because it was not served on any nonparty successor or representative of Ms. King's estate. (*Id.* ¶¶ 11–13); *see* *Barlow v. Ground*, 39 F.3d 231, 233–34 (9th Cir. 1994) (holding that a suggestion of death must be served on nonparty successors or representatives of the deceased party in the manner provided by Rule 4 to trigger the 90-day period). An order granting the requested extension without prejudice to all parties' positions on those issues would therefore be appropriate.

## CONCLUSION

The probate court has not yet determined who will serve as the general personal representative of Ms. King's estate, and it will not take up that question until January 2027. Plaintiffs' request allows substitution to follow that determination, includes a fixed outer date and an interim status report, alters no other deadline, and prejudices no party. The Responding Defendants concede the interim nature of Mr. King's appointment and the prospect of a second substitution, and they identify no harm from waiting. Plaintiffs therefore respectfully request that the Court grant the Motion and extend the time to move for substitution of a successor to Defendant Carole King through the earlier of (i) thirty days after the Superior Court of California, County of San Luis Obispo, issues letters testamentary or letters of administration to a general personal representative of the Estate of Carole D. King, or (ii) January 26, 2027, with a status report due on or before December 14, 2026, and without prejudice to any party's position regarding whether the Rule 25(a)(1) period was triggered or whether any claim against Ms. King survived her death.

Respectfully submitted,

Dated: October 26, 2026

**BAKER & MCKENZIE LLP**

By: *Nicholas O. Kennedy*
Nicholas O. Kennedy
Annasofia A. Roig
(Admitted *Pro Hac Vice*)

**MANASSERIAN LAW, APC**
Armen Manasserian

Attorneys for Plaintiffs,
Coronitas Holdings, LLC, and
Wolverine Endeavors VIII, LLC

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO L.R. 11-6.1 & L.R. 11-6.2**

The undersigned counsel of record for Plaintiffs Coronitas Holdings, LLC, and Wolverine Endeavors VIII, LLC in this action, certifies that this brief contains 12 pages, which complies with the page limit set by Judge John F. Walter's Standing Order filed on December 29, 2025.

Dated: October 26, 2026

**BAKER & McKENZIE LLP**

By: */s/ Nicholas O. Kennedy*
Nicholas O. Kennedy
Annasofia A. Roig
(Admitted *Pro Hac Vice*)

**MANASSERIAN LAW, APC**
Armen Manasserian

Attorneys for Plaintiffs,
Coronitas Holdings, LLC, and
Wolverine Endeavors VIII, LLC

**CERTIFICATE OF COMPLIANCE REGARDING GENERATIVE ARTIFICIAL INTELLIGENCE**

Pursuant to the Court's Order Re: Artificial Intelligence [ECF No. 160], counsel hereby discloses that artificial intelligence tools were used in connection with certain aspects of the preparation and review of this filing, including to review draft language and propose edits and revisions to attorney-drafted work product. Such tools were used solely as assistive resources and not as a substitute for counsel's independent professional judgment.

Undersigned counsel and attorneys at undersigned counsel's law firm have reviewed and verified the accuracy of all legal citations, quotations, factual statements, and legal analyses contained in this filing. All cited authorities were independently confirmed, and all factual assertions were reviewed against the underlying source materials available to counsel. Undersigned counsel has exercised independent legal judgment with respect to all content submitted to the Court and certifies that this filing complies with the Court's Order Re: Artificial Intelligence.

Dated: October 26, 2026

**BAKER & MCKENZIE LLP**

By: */s/ Nicholas O. Kennedy*
Nicholas O. Kennedy
Annasofia A. Roig
(Admitted *Pro Hac Vice*)

**MANASSERIAN LAW, APC**
Armen Manasserian

Attorneys for Plaintiffs,
Coronitas Holdings, LLC, and
Wolverine Endeavors VIII, LLC